**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 27 2008 ★

BROOKLYN OFFICE



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHANNES BAUMGARTNER WIRTSCHAFTS- UND VERMÖGENSBERATUNG GMBH, and HOLGER KNUT THEILER<br><br>                              Plaintiffs,<br><br>V.<br><br>STANLEY P. SALZMAN, ESQ.<br>STANLEY P. SALZMAN, P.C.,<br>POSTBANK FINANZBERATUNG AG,<br>BHW BAUSPARKASSE AG,<br>PETER SCHMIDT,<br>AMBIENTE GMBH,<br>BLACKSTONE CAPITAL TRADE AG,<br>CARTER BAILEY OPPENHEIM & DRYFUS, INC.,<br>J. GREENBAUM,<br>JOHN RALSTON,<br>FERNANDO FARIA SAMPAIO,<br>SINO-IBERIAN HOLDINGS LIMITED,<br>IT'S INVESTMENT TREUHAND & SERVICE GMBH,<br>NORBERT SCHRAMM,<br>ALI KARLI,<br>LIDER INTERNATIONAL IMPORT & EXPORT GMBH,<br>MESUT CETIN,<br>HÜSEYIN COBAN, and<br>DEFENDANT DOES 1-50<br>                              Defendants. | **08 . 2582**<br><br>**COMPLAINT**<br><br>**IN CIVIL ACTION**<br><br>No. _____<br><br><br>**SEYBERT, J**<br><br>**ECF CASE**<br><br>**TOMLINSON, M.J.**<br><br>**JURY TRIAL DEMANDED** |

1

**INDEX**

PLAINTIFFS' COMPLAINT………………………………………………………5

I. THE PARTIES……………………………………………………………………5

    A. PLAINTIFFS……………………………………………………………………5

    B. DEFENDANTS…………………………………………………………………5

    C. OTHER PARTIES THAT ARE NEITHER PLAINTIFFS NOR DEFENDANTS……11

II. JURISDICTION AND VENUE………………………………………… …12

III. BACKGROUND AND FACTS OF THE CASE……...………………………14

    A.     SUMMARY………………………………………………………14

    B.     STATEMENT OF FACTS…………………………………………22

          a.     DEFENDANTS' INVESTMENT SCHEMES………………………22

          b.     HUGE PURPORTED PROFITS…………………………………23

          c.     INVESTOR AGREEMENTS……………………………………25

          d.     SOLICITATION OF INVESTORS………………………………25

          e.     INVESTORS…………………………………………………27

          f.     MONEY TRANSFERS…………………………………………28

          g.     DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS………29

V. WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANTS………………31

    A. FIRST CAUSE OF ACTION – BREACH OF CONTRACT…………………………31

    B. SECOND CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY………………33

    C. THIRD CAUSE OF ACTION – GROSS NEGLIGENCE…………………………34

    D. FOURTH CAUSE OF ACTION – CONVERSION…………………………………35

E. FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT............……………….36

F. SIXTH CAUSE OF ACTION – CONSTRUCTIVE FRAUD.....................................37

G. SEVENTH CAUSE OF ACTION - FRAUD...............................................……........38

   a. DEFENDANTS' FRAUDULENT MISREPRESENTATIONS
     INVOLVING RISK OF LOSS………………………………………………..38

   b. THE SCHEME TO DEFRAUD…………..........................................………39

H. EIGHTH CAUSE OF ACTION – CIVIL CONSPIRACY AND
   FRAUDULENT CONCEALMENT........................................................................41

   a. GENERAL………………………………………………………………….41

   b. DEFENDANTS' CONCERT OF ACTION…………………………………43

I. NINTH CAUSE OF ACTION – CONSTRUCTIVE TRUST........................................44

J.     TENTH CAUSE OF ACTION – VIOLATION OF FEDERAL SECURITIES
   LAWS.....................................................................................................................46

   a.     COUNT  I – FRAUD: VIOLATIONS OF SECTION 17(a)(1) OF THE
        SECURITIES ACT [15 U.S.C. §
        77q(a)(1)].............................................................................................46

   b.     COUNT II – FRAUD: VIOLATIONS OF SECTION 17(a)(2)
        AND 17(a)3 OF THE SECURITIES ACT
        [15 U.S.C. §§ 77q(a)(2) AND
        77q(a)(3)].............................................................................................47

   c.     COUNT III – FRAUD: VIOLATIONS OF SECTION 10b-5
        OF THE EXCHANGE ACT  [15 U.S.C. § 78j(b)] AND RULE 10b-5
        THEREUNDER [17 C.F.R. § 240.10b-
        5].........................................................................................................48

   d.     COUNT IV – UNREGISTERED OFFERING OF SECURITIES:
        VIOLATIONS OF SECTIONS 5(a) AND 5(c) OF THE SECURITIES
        ACT [15 U.S.C. §§ 77e(a) AND
        77e(c)].................................................................................................49

   e.     COUNT V – EFFECTING SECURITIES TRANSACTIONS FOR THE
        ACCOUNT OF OTHERS WITHOUT BEING REGISTERED WITH THE

SECURITIES AND EXCHANGE COMMISSION AS A BROKER-DEALER: VIOLATIONS OF SECTION 15(a) OF THE EXCHANGE ACT [15 U.S.C. § 78o(a)]...........................................................................................................50

K. ELEVENTH CAUSE OF ACTION - RICO VIOLATIONS...........................................52

    a.  VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1962(C) AND 1962(D)............................................53

    b.  VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1962(A) AND (D)............................................57

    c.  DEFENDANTS CONSTITUTE A SINGLE BUSINESS ENTERPRISE.....58
    d.  DEFENDANTS HAVE USED THE SAME ENTERPRISE, SCHEME, AND ARTIFICE TO DEFRAUD OTHERS.....................................................................................................60

VI. PLAINTIFF'S DAMAGES..................................................................... 61

VII. JURY DEMAND................................................................................62

VIII. CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST.......................62

IX. PRAYER FOR RELIEF.........................................................................62

VERIFICATIONS....................................................................................66

4

## PLAINTIFFS' COMPLAINT

Plaintiffs Johannes Baumgartner Wirtschafts-und Vermögensberatung GmbH (hereinafter referred to as **"JBWV"**) and Holger Knut Theiler (hereinafter referred to as **"THEILER"**) (collectively hereinafter referred to as **"Plaintiffs"**) allege as follows:

### I. PARTIES

### A. PLAINTIFFS

1. Plaintiff JBWV is an Austrian limited liability company with a place of business at Weyringergasse 8, 1040 Vienna, Austria, represented by its managing director, Johannes Baumgartner, an individual holding Austrian citizenship.

2. Plaintiff THEILER is an individual holding German citizenship with a place of business at Kamillenweg 21, 24217 Schönberg, Germany.

### B. DEFENDANTS

3. Defendant STANLEY PHILIP SALZMAN (hereinafter **"SALZMAN"**) is an individual duly admitted to practice law in the State of New York since 1956 under attorney registration number 1130582 since 1956 with a place of business at 11 Grace Avenue, Great Neck, New York 110022 where SALZMAN may be served with process.

SALZMAN is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below. On information and belief, a substantial part of the unlawful acts and omissions set forth below occurred in, or originated from, SALZMAN's principal place of business in Great Neck, New York.

4. Defendant STANLEY PHILIP SALZMAN, P.C. (hereinafter **"SALZMAN P.C."**) is a

professional corporation engaged in the practice of law in the State of New York with a place of business at 11 Grace Avenue, Great Neck, New York 110022 where SALZMAN P.C. may be served with process.

Defendant SALZMAN P.C., along with its agents, servants and/or employees, is sued herein under federal and New York state law as an instrumentality and *alter ego* of Defendant SALZMAN in the wrongful and fraudulent acts, omissions, and scheme set forth below.

5. Defendant POSTBANK FINANZBERATUNG AG (hereinafter **"PFB"**) is a German corporation with a place of business at Marktplatz 12, 59065 Hamm, Germany where PFB may be served with process.

PFB, along with its agents, servants and/or employees, is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below. On information and belief, a substantial part of the events and omissions set forth below occurred as a result of written transmissions made by facsimile, as well as via telephone, between PFB through its agents, servants and/or employees and Defendant SALZMAN's principal place of business in Great Neck, New York.

6. Defendant BHW BAUSPARKASSE AG (hereinafter **"BHW"**) is a German corporation with a place of business at Lubahnstrasse 2, 31789 Hameln, Germany where BHW may be served with process.

BHW, along with its agents, servants and/or employees, is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below. On information and belief, a

6

substantial part of the events and omissions set forth below occurred as a result of written transmissions made by facsimile, as well as via telephone, between BHW through its agents, servants and/or employees and Defendant SALZMAN's principal place of business in Great Neck, New York.

7. Defendant PETER SCHMIDT (hereinafter **"SCHMIDT"**) is an individual holding German citizenship with a place of business at Friedrichstrasse 191, 42551 Velbert, Germany. On information and belief, he is also an officer or director of Defendants AMBIENTE GMBH and BLACKSTONE CAPITAL TRADE AG where SCHMIDT may be served with process.

SCHMIDT is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

8. On information and belief, Defendant AMBIENTE GMBH (hereinafter **"AMBIENTE"**) is a German limited liability company with a place of business at Friedrichstrasse 191, 42551 Velbert, Germany. AMBIENTE may also be served by serving its executive officer, Defendant SCHMIDT where AMBIENTE may be served with process.

AMBIENTE, along with its agents, servants and/or employees, is sued herein under federal and New York state law as an instrumentality and *alter ego* of Defendant SCHMIDT in the wrongful and fraudulent acts, omissions, and scheme set forth below.

9. On information and belief, Defendant BLACKSTONE CAPITAL TRADE AG (hereinafter **"BLACKSTONE"**) is a Liechtenstein corporation with a place of business at P.O.B. 168, 9493 Mauren, Principality of Liechtenstein. BLACKSTONE may be served with process there and at Friedrichstrasse 191, 42551 Velbert, Germany.

7

1    BLACKSTONE, along with its agents, servants and/or employees, is sued herein under

2  federal and New York state law as an instrumentality and *alter ego* of Defendant SCHMIDT in

3  the wrongful and fraudulent acts, omissions, and scheme set forth below.

4    10. On information and belief, Defendant CARTER BAILEY OPPENHEIM &

5  DRYFUS, INC.  (hereinafter **"CBOD"**) is a Delaware corporation with a place of business at 15

6  Loockerman Street, Dover, Delaware 19801 where CBOD may be served with process.

7    CBOD, along with its agents, servants and/or employees, is sued herein under federal and

8  New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent

9  and other wrongful acts, omissions, and scheme set forth below.

10    11. On information and belief, Defendant J. GREENBAUM (hereinafter

11  **"GREENBAUM"**) is an individual and an officer or director of Defendant CBOD with a place

12  of business at 15 Loockerman Street, Dover, Delaware 19801 where GREENBAUM may be

13  served with process.

14    GREENBAUM is sued herein under federal and New York state law as a direct

15  participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts,

16  omissions, and scheme set forth below.

17    12. On information and belief, Defendant JOHN RALSTON (hereinafter **"RALSTON"**)

18  is an individual and an officer or director of Defendant CBOD with a place of business at 15

19  Loockerman Street, Dover, Delaware 19801 where RALSTON may be served with process.

20    RALSTON is sued herein under federal and New York state law as a direct participant,

21  aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and

22  scheme set forth below.

8

13. On information and belief, Defendant FERNANDO FARIA SAMPAIO (hereinafter **"SAMPAIO"**) is an individual of unknown citizenship and an officer or director of Defendant Sino-Iberian Holdings Limited with a place of business at 35 Barrack Road, Third Floor, Belize City, Belize where SAMPAIO may be served with process.

SAMPAIO is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

14. On information and belief, Defendant SINO-IBERIAN HOLDINGS LIMITED (hereinafter **"SINO"**) is a Belize corporation with a registered office at 35 Barrack Road, Third Floor, Belize City, Belize where SINO may be served with process.

SINO, along with its agents, servants and/or employees, is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below, and as an instrumentality and *alter ego* of Defendant SAMPAIO.

15. On information and belief, Defendant IT'S INVESTMENT TREUHAND & SERVICE GMBH (hereinafter **"IT'S"**) is a German limited liability company with a place of business at Airportcenter Office Center, Robert-Bosch-Strasse 2, 59439 Holzwickede, Germany where IT'S may be served with process.

IT'S, along with its agents, servants and/or employees, is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below, and as an instrumentality and *alter ego* of Defendants Norbert Schramm and Ali Kali.

9

16. On information and belief, Defendant NORBERT SCHRAMM (hereinafter **"SCHRAMM"**) is an individual holding German citizenship with residence at Morgenstrasse 63, 45888 Gelsenkirchen, Germany where SCHRAMM may be served with process.

SCHRAMM is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

17. On information and belief, Defendant ALI KARLI (hereinafter **"KARLI"**) is an individual holding German citizenship with residence at Vandalenstrasse 10, 45888 Gelsenkirchen, Germany where KARLI may be served with process.

KARLI is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

18. Defendant MESUT CETIN (hereinafter **"CETIN"**) is an individual holding Turkish citizenship with a place of business at Defendant Lider International Import & Export GmbH, Viktoriastrasse 18, 47229 Duisburg, Germany where CETIN may be served with process.

CETIN is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

19. Defendant LIDER INTERNATIONAL IMPORT & EXPORT GMBH (hereinafter **"LIDER"**) is a German limited liability company with a place of business at Viktoriastrasse 18, 47229 Duisburg, Germany where LIDER may be served with process.

LIDER, along with its agents, servants and/or employees, is sued herein under federal and

10

New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below, and as an instrumentality and *alter ego* of Defendant CETIN.

20. On information and belief, Defendant HÜSEYIN COBAN (hereinafter **"COBAN"**) is an individual holding Turkish citizenship with a residence and/or place of business at Gümüssuyu No. 43, Beykoz, Istanbul, Turkey where COBAN may be served with process.

COBAN is sued herein under federal and New York state law as a direct participant, aider and abettor, and co-conspirator in the fraudulent and other wrongful acts, omissions, and scheme set forth below.

21. Defendants Does 1 - 50. Plaintiff is not aware of the true names and capacities, whether individual, corporate, or otherwise, of Defendants Does 1 - 50, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this complaint to include the true names and capacities of the Defendants sued herein as Does 1 - 30, inclusive, when the same have been ascertained. Plaintiff is informed and believes, and thereby alleges, that each of the defendants designated herein as a "Defendant Doe" acted in concert with each and every other defendant, intended to, and did, participate in and cause the events, acts, practices and courses of conduct alleged herein, or, alternatively, acted as the principal or agent of the other defendants or in the course and scope of said employment or agency, and proximately caused damages and injuries thereby to the Plaintiff as alleged herein.

## C. <u>OTHER PARTIES THAT ARE NEITHER PLAINTIFFS NOR DEFENDANTS</u>

22. Plaintiffs complain also on behalf of other directly or proximately injured parties, which injury or damage arises from Defendants' tortuous actions which made necessary certain

11

1  existing contractual agreements, to insure Plaintiffs' survival.

2      23. These parties are individuals or legal entities yet unknown who were induced to

3  transactions similar in nature to the pattern of racketeering activity alleged herein, whose proper

4  payments were unnecessarily delayed or avoided with exactly the same purpose and motive of

5  which Plaintiffs complain herein; as well as other unknown injured parties that may yet be

6  discovered.

7      24. These parties are included in accordance with the provisions of FRCP Rule 71.

8  **II.**

9  **JURISDICTION**

10      25. Plaintiffs aver on information and belief, and upon reasonable investigation and

11  research that Federal RICO laws 18 U.S.C. 1961-1968 do not frustrate the goals of any laws

12  applicable to this case, and further that the U.S. District Court for the Eastern District of New

13  York has jurisdiction in this matter because it presents a federal question pursuant to 28 U.S.C. §

14  1331.

15      26. The federal District Court has jurisdiction by statute under 18 U.S.C. § 1964(a.) All

16  Defendants are subject to the jurisdiction of this Court pursuant to 18 U.S.C. §1962 *et seq.*, the

17  RICO nationwide service of process statute.

18      27. The District Court has jurisdiction also based upon Diversity of Citizenship, 28

19  U.S.C. § 1332 regarding the tortuous actions alleged and violations of 18 U.S.C. 1962 by the

20  Defendants. The controversy arose between citizens of different states and citizens or subjects of

21  a foreign state.

22      28. There is relevant federal law regarding patterns of racketeering activity, RICO, and

specifically also with regard to wire fraud, 18 U.S.C. §1343 respectively. Therefore, the *Erie* doctrine is irrelevant, and the matters herein should be considered only within the bounds of Federal Law.

29. This Court has jurisdiction over this action pursuant to Sections 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa].

30. The Defendants, directly and indirectly, have made use of the mails and electronic means of communications among the means and instrumentalities of transportation and communication in interstate and international commerce, and other means and instruments of interstate and international commerce, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

31. The amount in controversy herein well exceeds the minimum jurisdictional requirements of this Court of $75,000.00 exclusive of interest and costs.

32. The District Court has supplemental jurisdiction over the state claims asserted hereunder pursuant to 28 U.S.C. § 1367(a).

### VENUE

33. Venue is proper in this district within the meaning of 28 U.S.C. 1391(a)(1) in that a substantial portion of the events giving rise to the claims iterated herein occurred and took effect in, or were directed to, Nassau County, New York, and at least two Defendants, SALZMAN and SALZMAN P.C., are residents of and/or have their principal place of business in Nassau County in the State of New York.

34. Venue lies in this Court also pursuant to Section 22(a) of the Securities Act [15

13

U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the transactions, acts, practices and courses of business constituting violations of the Securities Act and Exchange Act have occurred within the Eastern District of New York. Funds obtained by the Defendants from the Plaintiffs and presumably from other investors who have purchased investments in the Defendants' fraudulent bank debenture and high-yield trading programs were transferred to a bank account with Bank of America under the control of Defendants SALZMAN and SALZMAN P.C. in the Eastern District of New York. These funds have been solicited to purchase, and purportedly have purchased, investments in the Defendants' high-yield trading programs.

35. Any change of venue to a different district, for whatever reason, would cause such economic hardship to the plaintiffs that this case could not be litigated, and would negate utterly the pursuit of justice.

## III.

## BACKGROUND AND FACTS OF THE CASE

### A. SUMMARY

36. This case involves a multimillion-dollar, prime bank securities fraud scheme promoted by the Defendants all acting in concert in various roles. Defendants SALZMAN and/or SALZMAN P.C. and, as a consequence, the other Defendants through them acting as agents, were unjustly enriched by the receipt of $4,800,000.00 of the ill-gotten gains raised through their fraudulent schemes. Instrumental to the fraud and at the heart of this case is the breach of fiduciary duty by a New York attorney, Defendant SALZMAN and/or his *alter ego*, SALZMAN P.C., acting in a capacity as escrow agent in the disbursement of funds carried out despite the fact

14

that the conditions for disbursement were not met. Because of the complexity of the fraud, Plaintiffs reserve the right to set forth each Defendant's wrongful acts with more particularity in Plaintiffs' RICO Case Statement due subsequent to service of this Complaint.

37. From at least January 2008 until present, Defendant SCHMIDT, one of the "point men" of the Defendants' enterprise in Europe, solicited $4.8 million from the Plaintiffs in Austria and Germany and likely more from several other investors throughout Europe, to invest in his fraudulent "private placement" or "high yield" trading programs. He promoted these prime bank investment programs by presentations to individuals and groups and by encouraging investors to raise additional funds from their friends.

38. Defendants SALZMAN, SALZMAN P.C., SINO and others were actively involved in promoting similar schemes in the U.S. and elsewhere, relying in part on the support of Turkish organized crime figures and on Defendants IT'S, KARLI, SCHRAMM, LIDER, CETIN, COBAN and others with regard to access to bankers and bank documents originating from at least two European banking groups, Fortis Bank and BHW Bausparkasse AG, a member of the group of Deutsche Postbank AG.

39. The scheme was always the same and followed a well-known pattern known as "Advance Fee Fraud": members of the alleged conspiracy would court investors with representations, proposals and offerings regarding a "private placement program" (**"PPP"**) that would enable the investors to participate in a "high yield investment program" (**"HYIP"**) supposedly conducted by bank traders acting for major financial institutions that are licensed by the U.S. Federal Reserve.

40. The HYIP was supposed to generate returns far above market averages because, under strict supervision and control by the Federal Reserve, the licensed bank traders were alleged to sell fixed-income securities issued by major international money center banks at a substantial discount into the secondary bond market. Because of the frequency of these issues of bonds and medium-term notes and the resulting velocity of turnover, very high rates of return were certain to accrue for the term of the trading program.

41. The HYIP, as represented to investors, required a minimum amount available for investment of $100,000,000.00. Because it was clear that none of the Defendants had access to legitimate investors with immediately available liquid assets in that order of magnitude, and particularly not in light of the alleged regulatory restrictions on disclosures that would be routinely required in lawful banking and securities operations, Defendants represented that the minimum amount requirement could actually be met through lines of credit obtained for that purpose against a fee from major international banks.

42. Because substantial bank lines of credit, like any major debt, are not granted unless they are secured, the Defendants presented elaborate explanations of their allegation that the HYIP was actually risk-free, not only because the issuance and sale into the secondary market of bank debentures was supposedly secured by U.S. Treasury securities as well as regulated and supervised by the Federal Reserve, but they went even further and explained that, because of the risk-free nature of this trading, no actual transfer of the $100,000,000.00 required for participation in the HYIP needed to occur, but that it was sufficient to "block" the funds in the investors' own account and without granting any third party right to access, lien or otherwise

16

encumber these accounts. This "blocking" was supposed to occur by a SWIFT message represented by the Defendants to be known as "MT 760" instruction issued under the messaging system of the Society for World-Wide Interbank Financial Telecommunication (S.W.I.F.T.).

43. With every reasonably conceivable market and counterparty risk thus supposedly eliminated, the Defendants represented to their investors that they could surmount the high barriers to entry to a PPP or HYIP by raising nothing more than the bank fees and interest involved in issuing a line of credit that would never be drawn down or leave the lending bank. Since the proceeds of this line of credit would be "blocked" by way of an "MT 760" SWIFT instruction, all investors had to do was raise funds sufficient to cover the banking fees for set-up of a credit line facility and the first month's interest, quoted by the Defendants to amount to 3% of the requested line of credit. Thereafter, it was represented, the substantial returns expected to be generated by the PPP or HYIP would fund interest payments for the credit line at standard market rates, while the surplus would be distributed to the investors as profits after the "trading group" subtracted their share of profits.

44. Investors never learned the identity of all participants in the "trading group" on grounds of stringent confidentiality requirements purportedly enforced by the Federal Reserve.

45. Investors were led to believe that, regardless of the approved term of the PPP or HYIP, they would at the very least earn profits in an amount equivalent to the credit line thus obtained. The expected term of the investment program was to be one year, without assurance of renewal.

46. Defendants represented that, in order to secure a large credit line from a major bank

17

through the financial intermediary services of entities with whom they maintained close and established business relationships since considerable time, extensive disclosures about the origin of investor's funds and the investing entities would be required which, in turn, involved extensive regulatory approvals. Because of the extent of the reviews and the preparations involved, Defendants represented that a deposit of the set-up fee and first month interest in the amount of 3% was required in an approved attorney escrow account pending the completion of regulatory reviews.

47. At this point, Defendants SALZMAN and/or SALZMAN P.C. were introduced to the investor as a reputable and well-established New York law firm acceptable to the banks and financial institutions involved and approved by the Federal Reserve.

48. Investors were advised that various Defendants including SCHMIDT, AMBIENTE, BLACKSTONE, CBOD, RALSTON, GREENBAUM, SINO, IT'S, LIDER, CETIN, KALI, SCHRAMM and others would act as financial intermediaries to procure bank lines of credit in the contracted for amount. Pursuant to applicable correspondence, representations and agreements executed between investors and various Defendants, it was agreed and understood that Defendants SALZMAN and/or SALZMAN P.C. would hold investors' funds in escrow until such time as bank lines of credit or third-party accounts with a collected balance available for "blocking" pursuant to MT 760 SWIFT instructions would be identified and their availability confirmed by the respective bank to Defendant SALZMAN. It was specifically understood and agreed that SALZMAN had no authority to make disbursements of investor funds from the attorney trust account of SALZMAN P.C. with Bank of America in Great Neck, County of

18

1   Nassau, New York before he would have satisfied himself in accordance with professional

2   standards of diligence that funds that met all requisite criteria for participation in the PPP / HYIP

3   through "blocking" via MT 760 SWIFT instructions were actually available for that purpose at

4   the respective bank.

5        49. Although several Defendants acting as purported financial intermediaries represented

6   to the investors that they had secured such funds including original bank documents suitable for

7   verification with the bank, and despite the fact that Defendants SALZMAN and SALZMAN P.C.

8   were provided copies of the original bank documents for purposes of verification, Defendants

9   SALZMAN and SALZMAN P.C., acting in concert with the other Defendants that were part of

10  the scheme alleged herein, failed to effectively, diligently and professionally verify the

11  authenticity and accuracy of the bank documents provided by Defendants including SCHMIDT,

12  AMBIENTE, BLACKSTONE, CBOD, RALSTON, GREENBAUM, SINO, IT'S, LIDER,

13  CETIN, KALI, SCHRAMM and others to investors.

14       50. Defendants SALZMAN and SALZMAN P.C. contacted Defendants PBF and BHW

15  that had issued the bank documents evidencing the alleged financial assets made available for

16  "blocking" via MT 760 SWIFT instruction for the benefit of the investors by cursory and

17  perfunctory means, and in each case obtained confirmations via telephone and facsimile that

18  were deemed satisfactory by SALZMAN but were later disavowed as false.

19       51. On information and belief, SALZMAN and SALZMAN P.C. withdrew and disbursed

20  escrowed funds from the attorney trust account even before their purported "confirmations" were

21  obtained from banks. On information and belief, Defendants SALZMAN and SALZMAN P.C.

1    knew, or had reason to know, that the bank documents they were purporting to verify were false.

2        52. It is a hallmark of the pattern of fraud and deceit perpetrated by the Defendant's

3    criminal enterprise alleged herein that Defendants SALZMAN  and SALZMAN P.C. breached

4    the fiduciary duty incumbent upon a New York attorney acting as escrow agent and

5    misappropriated funds in close cooperation with Defendant SINO.  The same pattern has been

6    alleged in three other lawsuits against the same defendants presently pending in federal and state

7    courts across the nation.

8        53.  In order to induce investors to invest in the fraudulent investment programs promoted

9    by SCHMIDT, Defendants SCHMIDT, SALZMAN, SAMPAIO, SINO, CBOD and others made

10   material misrepresentations and omissions of fact to investors concerning, among other things,

11   the existence of the trading programs, unreasonable claims of expected profits from the

12   programs, the purported required minimum investments for entry into the programs, and the

13   purported safe, risk-free nature of the programs. For example, SCHMIDT led investors to expect

14   profits of between 5% and 100% per month in purported trading programs where the investments

15   were purportedly fully secured by the Federal Reserve System of the United States and the

16   United States Treasury and by other means. In fact, such programs do not exist and, on

17   information and belief, Defendants SCHMIDT, SALZMAN, SAMPAIO, SINO, CBOD,

18   RALSTON, GREENBAUM and possibly others knew and had reason to know that their

19   representations were false when made.

20       54. To facilitate this fraudulent scheme, certain Defendants formed AMBIENTE GMBH,

21   a foreign limited liability company organized in Germany; BLACKSTONE CAPITAL TRADE

1    AG, a foreign corporation organized in the Principality of Liechtenstein; CARTER BAILEY

2    OPPENHEIM & DRYFUS, INC., a Delaware corporation; SINO-IBERIAN HOLDINGS

3    LIMITED, a foreign corporation organized in Belize; IT'S INVESTMENT TREUHAND &

4    SERVICE GMBH, a foreign limited liability company organized in Germany; and other entities.

5    Defendants PFB, BHW, SCHRAMM, KALI, GREENBAUM and RALSTON and other

6    Defendants as yet unknown through their representations, actions and omissions aided and

7    abetted the fraudulent scheme in ways to be more fully and specifically determined in discovery

8    and by the means of various investigations. SALZMAN caused money raised from Plaintiffs in

9    the Defendant's fraudulent schemes to be transferred to and deposited in his attorney trust

10   account no. 9505383271 with the Bank of America in Great Neck, New York. From there,

11   SALZMAN subsequently withdrew and transferred funds to other Defendants named and as yet

12   unnamed by means of wire and otherwise.

13       55.  Plaintiffs bring this action to enjoin the Defendants from continued violations of the

14   federal securities laws, for disgorgement of their ill-gotten gains, for damages, punitive and

15   exemplary damages and treble damages, for the imposition of a constructive trust, for an

16   accounting and for other equitable relief.

17       56.  By virtue of their conduct, the Defendants directly or indirectly have engaged and,

18   unless enjoined, will continue to engage, in violations of Sections 5(a) and 5(c) of the Securities

19   Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)], Section 17(a) of the Securities

20   Act [15 U.S.C. § 77q(a)], Sections 10(b) and 15(a) of the Securities Exchange Act of 1934

21   ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)(1)] and Rule 10b-5 thereunder [17 C.F.R. §

21

1   240.10b-5].

2   57. Defendants SALZMAN, SALZMAN P.C. and possibly others, by virtue of their

3   conduct, directly or indirectly, were unjustly enriched and hold proceeds from the Defendants'

4   frauds, which they have no equitable basis to retain.

5   58. Defendants, by acting as co-conspirators in concert and collusion and committing a

6   series of fraudulent acts in violation of the federal securities laws, involving use of the mails and

7   electronic communications in interstate and international commerce forming a pattern of

8   racketeering, along with several other predicate acts including money laundering, to be more

9   fully set forth in Plaintiffs' RICO Case Statement in due course, violated the federal Racketeer

10   Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a), 1962(c) and 1962(d).

11   **B. STATEMENT OF FACTS**

12   **Defendants' Investment Schemes**

13   59. From at least January 2008 through present, Defendants raised $4.8 million from

14   Plaintiffs alone and very likely raised additional amounts from other investors throughout the

15   United States and overseas, purportedly for investment in the fraudulent ""high-yield" trading

16   programs discussed below.

17   60. Defendants represented to investors including Plaintiffs that they were investing in

18   high-yield trading programs.

19   61. SCHMIDT represented to the Plaintiffs that investor funds will be used to purchase

20   and trade discounted financial instruments issued by purported prime banks, a term referring to

the "Prime" world banks, sometimes the "Top 50" or "Top 100" world banks, in a clandestine overseas market to generate huge returns for the investor.

62. According to SCHMIDT, this highly profitable trading occurs in a little-known trading market where a few traders buy and sell deeply discounted bank instruments through a series of prearranged trades. SCHMIDT and the materials he presented to investors including the Plaintiffs claimed that profits from this trading were purportedly guaranteed because the traders did not purchase the discounted financial instruments until they had prearranged a transaction to sell them on a profitable basis.

63. SCHMIDT told investors including the Plaintiffs that very few people knew about these purportedly secret trading markets. He required investors to execute "non-disclosure/non-circumvention" agreements that purportedly prohibited the investor from disclosing any information about the purported investment or from using any information gained from the promoter or purported trader to circumvent the program. According to these agreements, information about the purported trading programs was "highly sensitive, proprietary and confidential" and included "knowledge pertaining to sensitive banking and trade relationships and programs."

**Huge Purported Profits**

64. SCHMIDT told prospective investors that they were guaranteed high rates of return ranging between 5% and 100% per month. Despite these extraordinary returns, SCHMIDT assured investors there was no risk to their investment principal because it was trading activity supervised by governmental institutions.

23

65. SCHMIDT explained to Plaintiffs that the reason the trading program was able to pay such attractive returns was because the purported trading group was earning 1,000% to 2,000% per year on the money by participating in a secret high-yield trading program that involved "bank paper."

66. According to SCHMIDT's representations, the purported trading program is an investment vehicle for the continuous purchase and resale of bank-issued debt instruments.

67. Further, SCHMIDT stated that only the world's most powerful and stable Money Center Banks take part in these programs and that these highly controlled, guaranteed programs must follow strict procedures, rules and regulations.

68. SCHMIDT stated that, while these programs have been available for years, strict secrecy and non-disclosure agreements are enforced. Therefore, publicity is not permitted and any `marketing' of such investments is strictly by invitation and cautious word of mouth. The SEC's and the Treasury Department's official positions are that the programs do not exist.

69. SCHMIDT explained that the purported trading programs that traded these types of instruments were conducted under specific guidelines set up by the Federal Reserve System, that traders authorized to conduct them were licensed by the Fed, and they were risk free.

70. The purported trading programs SCHMIDT described to the Plaintiffs and investors and referred to, directly or indirectly, in his presentations and written materials do not exist. Banks, large and small, trade bonds, debentures and other financial instruments. Banks, whether international or in the United States, large or small, do not sell bonds or other financial

24

1  instruments at discounts like those which SCHMIDT represented to Plaintiffs would produce the

2  huge, unrealistic rates of return that he promised them.

3  71. Many of the terms and descriptions in SCHMIDT's and the other Defendant's

4  presentations and written materials have no accepted commercial meaning at all. The Defendants

5  also falsely described well-known commercial practices to help establish the appearance of

6  reality of their program.

7  **Investor Agreements**

8  72. SCHMIDT required investors including Plaintiffs to sign investment agreements with

9  BLACKSTONE and CBOD. Among other things, these agreements provided: (1) that investor

10  funds would be used to obtain a credit line provided by third parties to meet the purported

11  minimum amount necessary to participate in the investment; (2) that the principal investment

12  purportedly would be fully collateralized by U.S. Treasury securities and, hence, there would be

13  no risk whatsoever to the investor's principal; and (3) that the full principal invested would be

14  returned to the investor at the termination of the agreement, along with profits.

15  73. In addition, each agreement included a payment schedule that incorporated the

16  purportedly huge returns promised to each investor including the Plaintiffs.

17  74. SCHMIDT signed the agreements on behalf of either AMBIENTE or

18  BLACKSTONE.

19  75. SCHMIDT promised different, but always unrealistic, rates of return to the

20  individuals and entities who invested with Defendants.

25

1

**Solicitation of Investors**

2      76. SCHMIDT promoted his bank debenture and high-yield trading programs by

3 presentations to individuals and groups of investors. He also promoted his schemes by

4 encouraging individuals who had invested with him to raise additional money for high-yield

5 trading program schemes from their friends. His presentations explained how the purported bank-

6 debenture trading programs worked, the purported history of the programs, the need for secrecy

7 and the reasons why, according to SCHMIDT, banks and regulators denied the existence of the

8 programs.

9      77. SCHMIDT encouraged individuals who invested with him to solicit other investors to

10 pool their funds in order to raise the minimum amounts he claimed were required to participate in

11 these purported trading programs.

12      78. None of the Defendants ever paid the Plaintiffs any portion of the purported profits

13 they had been promised. Defendant COBAN who, on information and belief is linked to Turkish

14 organized crime, acted as co-conspirator after the fact by possessing and using material non-

15 public information about Plaintiff JBWV's business relationship with and claims against

16 Defendants SALZMAN, SALZMAN P.C., CBOD, GREENBAUM, RALSTON, SINO.

17      79. Faced with imminent legal action, Defendant SALZMAN, acting through Defendant

18 SALZMAN P.C., obtained by undue pressure and duress a writing from Plaintiff THEILER

19 which agreed not to cooperate with Plaintiff JBWV and not to take any legal action, provided the

20 amount of $1,000,000 representing only part of Plaintiff THEILER's damages, would be wired to

21 THEILER's account. Despite the fact that this payment was made, Plaintiff THEILER is not

26

legally bound to honor an "agreement" extorted by a fraudster in exchange for returning part of the proceeds of the crime to which the payor held no lawful claim in the first place.

**Investors**

80. In January 2008, SCHMIDT persuaded Plaintiff JBWV to invest in his high-yield trading program. He assured her that the investment was risk free and that it would be secured by the Federal Reserve and by U.S. Treasury securities.

81. SCHMIDT explained to the investor, Plaintiff JBWV, that minimum investments were required to participate in this high-yield trading program and that its money would be pooled with other investor money to meet these minimum requirements.

82. SCHMIDT represented to this investor, Plaintiff JBWV, that the trading program paid at least 5% - 100% return each month, and that his investment would be repaid with substantial interest from that investment income.

83. SCHMIDT falsely told the investor, Plaintiff JBWV, that he had invested millions of his own money in this program.

84. Based on SCHMIDT's assurances, the investor. Plaintiff JBWV, raised the amount of $3,600,000 required under Defendant SCHMIDT's proposal and invested $3,600,000 through Defendant SALZMAN.

85. Pursuant to SCHMIDT's instructions, funds were wired by Plaintiff JBWV to an attorney trust account numbered 9505383271 at a Bank of America branch in 10 Middle Neck Road, Great Neck, Nassau County, New York .

1    86. In January 2008, SCHMIDT persuaded Plaintiff THEILER to invest in his high-yield

2  trading program. He assured him that the investment was risk free and that it would be secured

3  by the Federal Reserve and by U.S. Treasury securities.

4    87. SCHMIDT explained to the investor, Plaintiff THEILER, that minimum investments

5  were required to participate in this high-yield trading program and that his money would be

6  pooled with other investor money to meet these minimum requirements.

7    88. SCHMIDT represented to this investor, Plaintiff THEILER, that the trading program

8  paid a return of at least 5% - 100% each month, and that his investment would be repaid with

9  substantial interest from that investment income.

10    89. SCHMIDT falsely told the investor, Plaintiff THEILER, that he had invested millions

11  of his own money in this program.

12    90. Based on SCHMIDT's assurances, the investor. Plaintiff THEILER, raised the amount

13  of $1,200,000 required under Defendant SCHMIDT's proposal and invested $1,200,000 through

14  Defendant SALZMAN.

15    91. Pursuant to SCHMIDT's instructions, each of the Plaintiffs' investments was made

16  via wire transfers into SALZMAN's attorney trust account numbered 9505383271 at a Bank of

17  America branch in 10 Middle Neck Road, Great Neck, Nassau County, New York.

18                                      **Money Transfers**

19    92. On or about March 19, 2008 Plaintiff JBWV transferred approximately $3,600,000.00

20  from its  account at Volksbank Wien, Vienna, Austria to Defendant SALZMAN's attorney trust

1   account no. 9505383271 at Bank of America in Great Neck, New York. SALZMAN and the

2   other Defendants provided nothing of value in exchange for this money, has no legal or equitable

3   claim to this money and would be unjustly enriched if allowed to retain any part of it.

4        93. On or about March 20, 2008 Plaintiff THEILER transferred approximately

5   $1,200,000.00 from his account at Clariden Leu AG in Zurich, Switzerland to Defendant

6   SALZMAN's attorney trust account no. 9505383271 at Bank of America in Great Neck, New

7   York. $1,000,000.00 was subsequently returned by SALZMAN and Plaintiff THEILER gave due

8   credit for this part of restitution. As for the balance of $200,000.00 plus interest and Plaintiff

9   THEILER's disbursements, SALZMAN and the other Defendants provided nothing of value in

10   exchange for this money, has no legal or equitable claim to this money and would be unjustly

11   enriched if allowed to retain any part of it.

12   **Defendants' Misrepresentations and Omissions**

13        94. SCHMIDT, SALZMAN, SAMPAIO, CBOD, GREENBAUM, RALSTON, IT'S,

14   SCHRAMM, KARLI, LIDER, CETIN and the other Defendants made misrepresentations and

15   omissions of material fact to investors including Plaintiffs about high-yield trading programs and

16   assets available therefore, including, among others, misrepresentations about the existence of the

17   purported trading programs, the risks of the investment, the unrealistic and huge profits he

18   promised to investors and the profitability of his own investments in the programs.

19        95. SCHMIDT falsely represented to investors including Plaintiffs that the money they

20   invested in his purported bank debenture and high-yield trading programs would be used to

21   participate in high-yield international banking transactions with major world banks such as

29

1   Société Générale Bank and Trust and HSBC Bank in Singapore. SCHMIDT, SALZMAN and

2   SAMPAIO represented that their prime bank securities schemes would produce huge, risk-free

3   profits when, in fact, all Defendants knew or were severely reckless in not knowing, that such

4   prime bank trading programs do not exist.

5       96. SCHMIDT made written representations and signed investment agreements on behalf

6   of Defendants AMBIENTE and BLACKSTONE with investors including Plaintiffs which falsely

7   stated that investors' principal would be used to secure a credit line by a major bank the proceeds

8   of which would be used in a risk-free high-yield bank debenture trading program.

9       97. Neither of the Defendants, acting in concert and through SCHMIDT , SALZMAN,

10  SINO, CBOD and others had a reasonable basis to guarantee investors profits between 5% and

11  100% per month in risk-free investments.

12      98. SCHMIDT falsely told investors including Plaintiffs that he had made millions for

13  himself by investing in these high-yield investment programs.

14      99. SCHMIDT, SALZMAN and SAMPAIO  knew they had not made the profits they

15  claimed to investors including Plaintiffs, simply because the investments they described do not

16  exist.

17      100. By the conduct described above, the Defendants, acting in concert, engaged in

18  business as broker-dealers and induced and attempted to induce the purchase and sale of

19  securities. Neither of the Defendants was registered with the Securities and Exchange

20  Commission as a broker or dealer, and was not associated with any broker or dealer. Neither of

30

1    the Defendants' business was exclusively intrastate.

2        101. The investments that the Defendants ventured to sell to prospective investors in the

3    "high yield" trading program in which customers' funds would purportedly be placed, constitute

4    securities, as that term is defined in in Section 2(a)(1) of the Securities Act [15 U.S.C. §

5    77b(a)(1)], and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

6        102. No registration statement is in effect, nor has any registration statement been filed

7    with the Securities and Exchange Commission, with respect to the securities sold by the

8    Defendants.

9    **IV.**

10   **WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANTS**

11   **A. FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

12       103. Plaintiffs restate and incorporate herein by reference the foregoing allegations

13   contained in this Complaint.

14       102. Defendants SCHMIDT and SALZMAN each entered into a contract with Plaintiffs

15   under which they assumed specific express and implied obligations.

16       103. The terms of Plaintiff JBWV's contracts with Defendants SCHMIDT, AMBIENTE,

17   BLACKSTONE, SINO and CBOD are set forth in written agreements.

18       104. The terms of Plaintiff THEILER's contracts with Defendants SCHMIDT,

19   AMBIENTE, BLACKSTONE, SINO and CBOD are set forth in written agreements.

20       105. The terms of Defendant SALZMAN's contract with Plaintiff JBWV are set forth in

21   written agreements.

31

106. The terms of Defendant SALZMAN's contract with Plaintiff THEILER are set forth in written agreements.

107. Each of the Plaintiffs paid the agreed sums under each Agreement, including an arranger's fee to SCHMIDT of EUR 20,000.00 paid by Plaintiff JBWV as well as by Plaintiff THEILER, provided the requisite documentation, and otherwise fully discharged their legal obligations as set forth therein.

108. Defendant SCHMIDT failed to comply with the terms of the Agreements referenced herein in that he did not cause the agreed performance to be rendered to the Plaintiffs. Despite numerous requests by Plaintiffs to disclose the parties responsible for his default and to prove the nature and actual occurrence of justification of his default, Defendant SCHMIDT failed to provide any truthful, accurate and complete information to the Plaintiffs with regard to the reasons for his failure to perform.

109. Despite repeated demands by each Plaintiffs for return of the agreed fees of EUR 20,000.00 paid by Plaintiffs JBWV and THEILER to Defendant SCHMIDT, he declined to make effective restitution to either Plaintiff.

110. Defendants SCHMIDT, AMBIENTE, BLACKSTONE, SINO, SALZMAN and SALZMAN P.C. are in breach of their respective contracts with the Plaintiffs.

111. The total amount due Plaintiff JBWV from Defendants SALZMAN and SALZMAN P.C. as of this date is $3,600,000.00 plus interest and cost. The total amount due Plaintiff THEILER from Defendants SALZMAN and SALZMAN P.C. as of this date is $200,000.00 plus interest and cost. The total amount due Plaintiff JBWV from Defendants SCHMIDT, AMBIENTE, BLACKSTONE, SINO and CBOD as of this date is $120,000,000.0 plus interest

32

1   and cost. The total amount due Plaintiff THEILER from Defendant SCHMIDT, AMBIENTE,

2   BLACKSTONE, SINO and CBOD as of this date is $40,000,000.00 plus interest and cost.

3       112. Plaintiff' JBWV's damages are at least $120,000,000.00 plus pre-judgment interest

4   accruing at the statutory rate of 9% since March 19, 2008 until judgment is rendered in favor of

5   Plaintiff.

6       113. Plaintiff' THEILER's damages are at least $40,000,000.00 plus pre-judgment

7   interest accruing at the statutory rate of 9% since March 20, 2008 until judgment is rendered in

8   favor of Plaintiff.

9       WHEREFORE, Plaintiff JBWV prays for judgment against Defendants for damages in

10   the amount of $120,000,000.00 plus interest from March 19, 2008, plus costs, disbursements,

11   reasonable attorney fees, and such other relief as this Court deems just. Plaintiff THEILER prays

12   for judgment against Defendants for damages in the amount of $40,000,000.00 plus interest from

13   March 20, 2008 pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR §

14   5004 (the "statutory rate"), plus costs, disbursements, reasonable attorney fees, and such other

15   relief as this Court deems just.

16   **B. SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY**

17       114. Plaintiffs restate and incorporate herein by reference the foregoing allegations

18   contained in this Complaint.

19       115. Defendants SALZMAN and SALZMAN P.C. are engaged in the practice of law in

20   the State of New York and thereby bound by the Disciplinary Rules applicable to the State Bar of

21   New York which state in pertinent part:

22
23      "A lawyer in possession of any funds or other property belonging to another
         person, where such possession is incident to his or her practice of law, is a

fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own." (DR 9-102).

116. Plaintiffs JBWV and THEILER wired $3,600,000 and $1,200,000 respectively to Defendant SALZMAN's account marked by its title as an "attorney trust account" with Bank of America in Great Neck, County of Nassau, New York. These transfers were made incidental to the practice of law.

117. Defendants SALZMAN and SALZMAN P.C. misappropriated Plaintiffs' funds and commingled their funds by wrongfully releasing the said funds to the other Defendants and to themselves.

118. Defendants SALZMAN and SALZMAN P.C. knowingly and willfully misappropriated the funds as they had notice of the terms and conditions under which these funds were provided by the Plaintiffs as well as of Plaintiffs' specific instructions not to disburse funds prior to the diligent verification of those conditions having been met, but they disbursed the funds anyway.

119. Defendant SALZMAN's and SALZMAN P.C.'s breach of fiduciary duty caused Plaintiff JBWV to suffer damages in the amount of at least $3,600,000 and caused Plaintiff THEILER to suffer damages in the amount of at least $200,000 according to proof at trial.

WHEREFORE, Plaintiffs JBWV and THEILER seek compensatory, punitive and exemplary damages in the maximum amount authorized by New York law.

## C. THIRD CAUSE OF ACTION - GROSS NEGLIGENCE

120. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

34

121. Plaintiffs allege that all Defendants, but specifically Defendants PFB and BHW, at the time and on the occasions in question, acted with heedless and reckless disregard for the lawful interests of the Plaintiffs by failing to provide assets or organization sufficient to prevent, detect, and to minimize the effects of incidents of misrepresentation, fraud and conspiracy, which disregard was the result of conscious indifference to the rights of the Plaintiffs in violation of the laws of the United States, of the State of New York and other jurisdictions. Defendants' actions, errors and omissions constitute gross negligence in the performance of their duties and to the extent such actions, errors and omissions violated state and federal statutes and regulations and they constitute negligence *per se*.

WHEREFORE, Plaintiff JBWV prays for judgment against Defendants for damages in the amount of $120,000,000.00 plus interest from March 19, 2008 pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements, and such other relief as this Court deems just. Plaintiff THEILER prays for judgment against Defendants for damages in the amount of $40,000,000.00 plus interest from March 20, 2008 pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements, and such other relief as this Court deems just.

## D. FOURTH CAUSE OF ACTION - CONVERSION

122. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

123. By reason of the failure to comply with Plaintiffs' oral and written demand for the return to Plaintiffs of any and all monies paid by the Plaintiffs to Defendant SALZMAN,

35

1  SALZMAN and to the extent they had notice, other Defendants to be determined in discovery

2  committed the tort of conversion.

3  WHEREFORE, Plaintiff JBWV prays for judgment against Defendant SALZMAN, and

4  other defendants to be determined in discovery as having received notice, for joint and several

5  liability in damages in the amount of $3,600,000.00 plus interest from April 4, 2008, the date of

6  first demand for the return of monies paid by Plaintiff JBWV, pursuant to CPLR § 5001(a) at the

7  annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements,

8  and such other relief as this Court deems just.

9  Plaintiff THEILER prays for judgment against Defendant SALZMAN, and other

10  defendants to be determined in discovery as having received notice, for joint and several liability

11  in damages in the amount of $1,200,000.00 plus interest from April 25, 2008, the date of first

12  demand for the return of monies paid by Plaintiff THEILER, pursuant to CPLR § 5001(a) at the

13  annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements,

14  and such other relief as this Court deems just.

15  ### E. FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

16  124. Plaintiffs restate and incorporate herein by reference the foregoing allegations

17  contained in this Complaint.

18  125. The Defendants have no legitimate interest in, or right to, the funds received or

19  retained as a result of the fraudulent conduct of the Defendants which are currently being held by,

20  or in  constructive trust for, Defendant SALZMAN and therefore, in equity and good conscience,

21  they should not be allowed to retain any portion of such funds.

22  126. As a result, all Defendants in receipt of proceeds originated from Plaintiffs' funds

36

1   are liable for unjust enrichment and should be required to return their unjust enrichment, with

2   prejudgment interest.

3          WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them,

4   directing Defendants to pay restitution to the Plaintiffs of the funds by which they are unjustly

5   enriched for damages in the amount of $3,600,000.00 plus prejudgment interest from March 19,

6   2008, the date of payment by Plaintiff JBWV and in the amount of $1,200,000.00 plus

7   prejudgment interest from March 20, 2008, the date of payment by Plaintiff THEILER, pursuant

8   to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"),

9   plus costs, disbursements, for the costs of suit incurred herein, and for such other relief as this

10  Court deems just.

11  ## F. <u>SIXTH CAUSE OF ACTION - CONSTRUCTIVE FRAUD</u>

12         127. Plaintiffs restate and incorporate herein by reference the foregoing allegations

13  contained in this Complaint.

14         128. Defendants owed a duty to Plaintiffs to inform them of the fact that the business

15  propositions set forth by the Defendants had never been successfully completed before, were

16  staffed by unqualified und unlicensed individuals and did not contain sufficient staffing, assets or

17  organization to prevent, detect, and to minimize the effects of incidents of misrepresentation,

18  fraud, theft and conspiracy, that their payments were being obtained under false pretenses and

19  used without intent of compensation, and that the business operation of the Defendants did, from

20  its inception, not have legitimate authority over and access to assets sufficient to pay its debts

21  including the costs of its day-to-day operations as well as cash disbursements incurred at their

22  instructions or requests.

129. On information and belief, Defendants knew that substantially all statements and representations they made with regard to their respective roles in the proposed transactions were false when made. On information and belief, Defendants also knew that substantially all written documents which they provided to Plaintiffs with the purpose and intent for Plaintiffs to rely upon and to submit them further to appropriate parties, many of whom took part in the Defendants' conspiracy alleged herein, contained material falsehoods and Defendants knew that when they provided these documents.

130. By reason of their failure to make these disclosures to Plaintiffs, and the resulting detrimental reliance on the resulting appearances, the Defendants are guilty of constructive fraud.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, for damages in the amount of $120,000,000.00 plus interest from March 19, 2008, the date of payment of $3,600,000.00 by Plaintiff JBWV and in the amount of $40,000,000.00 plus interest from March 20, 2008, the date of payment of $1,200,000.00 by Plaintiff THEILER, pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements, and such other relief as this Court deems just.

## G. SEVENTH CAUSE OF ACTION – FRAUD

131. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

### a. DEFENDANTS' FRAUDULENT MISREPRESENTATIONS INVOLVING RISK OF LOSS

132. Defendant SCHMIDT, acting in concert with the other Defendants, represented that Plaintiffs' funds would be used to pay for bank set-up fees and interest for the first month for a

38

1   bank credit line or making available a third-party account with the requisite collected cash

2   balance for participation in the high-yield trading programs described herein.

3          133. On information and belief, all Defendants, specifically SCHMIDT, SAMPAIO,

4   SALZMAN, GREENBAUM, RALSTON, CETIN, KALI, SCHRAMM and others knew and had

5   reason to know that their respective representations regarding the terms and past successful

6   completions of the proposed high-yield trading program or Private Placement Program, the

7   authenticity of the bank documents provided by some of the Defendants with the connivance of

8   other Defendants and the promise to keep Plaintiff's funds safely in escrow subject to proper

9   verification of the terms and conditions for their disbursement would be reasonably, justifiably

10  and detrimentally relied upon by the Plaintiffs.

11         134. On information and belief, all Defendants knew that these representations were false

12  when made.

13         135. Thus the Defendants knowingly and intentionally placed Plaintiffs in peril, and

14  caused them injury.

15                              **b. THE SCHEME TO DEFRAUD**

16         136. Defendants SCHMIDT, SALZMAN and SAMPAIO represented to the Plaintiffs and

17  their agents, servants and employees that they would cause agreed payments to be made as a

18  result of a high-yield trading program when due pursuant to agreement.

19         137. Defendants SCHMIDT, SALZMAN, SAMPAIO and the other Defendants knew, or

20  had reason to know, that Plaintiffs and others would not have invested and would have incurred

21  no disbursements on their behalf other than on a prepaid basis if they had not been induced by the

22  aforesaid misrepresentations.

138. On information and belief, no one other than the Defendants had any reason to suspect financial fraud at the Defendants' criminal enterprise before Defendant SALZMAN failed to return Plaintiffs' payments upon their demand.

139. Plaintiffs and others reasonably, justifiably and detrimentally relied on all Defendants' fraudulent representations, oral or written, express or implied on behalf of Defendants SCHMIDT and SALZMAN regarding the background, education, training, assets, authority and personal and professional relationships of their own and of the other Defendants.

140. As a proximate result of Defendant SCHMIDT's fraudulent representations regarding his background, education, training, assets, authority and personal and professional relationships with the other Defendants and major financial institutions world-wide, Plaintiff JBWV suffered damages in the amount of at least $120,000,000.00 plus interest, reasonable attorney's fees, filing fees and costs of the suit, and Plaintiff THEILER suffered of at least $40,000,000.00 plus interest, reasonable attorney's fees, filing fees and costs of the suit.

141. The actionable conduct described herein, unless stated otherwise, refers to the conduct of all the defendant associations, corporations and individuals, both acting collectively and singularly, and is stated as the Defendants' criminal enterprise's conduct or acts.

142. The foregoing misrepresentations of Defendants SCHMIDT, SALZMAN, SAMPAIO, SINO, CBOD, PFB, HBW, IT'S, LIDER, CETIN, SCHRAMM, KALI and of the other Defendants, acting in agreement, concert, and conspiracy with each other, jointly and severally, as set forth fully above, did in fact induce reliance on the misrepresentations, and did manipulate and influence Plaintiffs and other investors from a date currently unknown until

40

present.

143. Plaintiffs reasonably and justifiably relied on the foregoing misrepresentations, and/or on the absence of a fraud perpetrated by the Defendants, as set forth more fully above.

144. As a direct and proximate result of the Defendants' pervasive fraud and conspiracy against investors as set forth more fully above, Plaintiffs have suffered injury and damages in that they were fraudulently induced to invest in the Private Placement Program offered by Defendant SCHMIDT on behalf of Defendant CBOD and other Defendants and they lost some or all of the actual or projected amount and value of their investments and disbursements, in amounts according to proof at trial.

WHEREFORE, Plaintiff JBWV prays for judgment against Defendants for damages in the amount of $120,000,000.00 plus interest from March 19, 2008 pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just. Plaintiff THEILER prays for judgment against Defendants for damages in the amount of $40,000,000.00 plus interest from March 20, 2008 pursuant to CPLR § 5001(a) at the annual rate of 9% as set forth in CPLR § 5004 (the "statutory rate"), plus costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

## H. EIGHTH CAUSE OF ACTION –

## CIVIL CONSPIRACY AND FRAUDULENT CONCEALMENT

### a. GENERAL

145. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

41

1    146. By withdrawing funds from his attorney trust account in violation of the terms and

2    conditions of applicable agreements, of Plaintiffs' express instructions and of his duty of

3    elementary diligence, and by refusing to cooperate with Plaintiffs subsequent demand for

4    disclosure of the amounts, dates and destination accounts of these transfers and with their

5    demand to return the misappropriated funds despite written requests, Defendant SALZMAN has

6    acted in concert with Defendants SCHMIDT, PBF, BHW, CBOD, SINO, SAMPAIO, IT'S,

7    LIDER, CETIN, SCHRAMM, KALI and the other Defendants in a pattern and practice to

8    commit torts (including without limitation fraud, conversion and breach of fiduciary duty), to

9    accomplish unlawful purposes including the misappropriation of funds and to fraudulently

10   conceal the extent and nature of the fraud, misrepresentation, and theft committed against

11   investors continuing through the present day. Defendants have also acted in concert to

12   fraudulently conceal the fact that Defendants engaged in a pattern and practice of stealing the

13   value of Plaintiff's investment without any compensation whatsoever, as well as deprive Plaintiff

14   of the value to Plaintiff of alternative income-generating opportunities.

15   147. All Defendants herein entered into a civil conspiracy to act in concert, accompanied

16   by a meeting of the minds regarding concerted action, the purposes of which were to suppress

17   and minimize public knowledge (as well as widespread knowledge within the Defendants'

18   criminal enterprise) of the rampant fraud, misrepresentation, and theft committed against

19   investors and to take a uniform position and approach to the handling of suspicions and

20   questioning. This uniform position and approach was designed to avoid criminal prosecution of

21   the Defendants, to avoid civil litigation and to prevent or minimize claims for damages, to avoid

22   public exposure of SALZMAN and the other Defendants, to protect the reputation of

1  SALZMAN, CBOD, SINO, IT'S, LIDER, PFB, HBW and the other Defendants from scandal,

2  and thus to insure the continued financial contributions of outside supporters to the Defendants'

3  criminal enterprise. This conspiracy to conceal includes spoliation of evidence and is ongoing.

4  Based on these actions, Plaintiff alleges that the Defendants are equitably estopped from

5  asserting any defense of limitations.

6        148. This ongoing conspiracy and concert of action was carried out by Defendants to

7  fraudulently conceal the fact that Defendants have committed acts of fraud, misrepresentation,

8  theft, negligence and gross negligence, and the other wrongful conduct described herein, and

9  have engaged in concerted action to commit acts of fraud, misrepresentation, theft, conversion,

10  negligence and gross negligence.

11        149. In the absence of this conspiracy and concert of action, the theft of Plaintiffs' funds

12  and deprivation of their alternative income-generating opportunities, would not have occurred.

13  Thus, Defendants' actions in furtherance of this conspiracy are the proximate cause of the injury

14  and damages suffered by Plaintiffs herein.

15        150. As a part of their conspiracy to conceal the fraud, misrepresentation and theft

16  directed at the Plaintiffs and other investors and their alternative income-generating opportunities

17  Defendants followed a practice of intentional failure to make truthful disclosures when due.

18        151. Plaintiffs allege that the Defendants also engaged in a conspiracy to remove and

19  destroy evidence in order to avoid the prosecution of Defendants and to cover up the theft of

20  Plaintiffs' funds and of their alternative income-generating opportunities. The purpose of this

21  conspiracy was to prevent criminal prosecution, avoid adverse publicity, prevent claims for

22  damages by the numerous victims, and to avoid exposure of this conspiracy designed to conceal

43

1   the claims arising from the conduct of the Defendants as part of their criminal enterprise. Further,

2   Defendants, in furtherance of the overall alleged conspiracy, engaged in affirmative acts to

3   conceal the existence of this conspiracy, and to conceal acts of fraud, misrepresentation, theft,

4   negligence, and gross negligence.

5                       **b.     DEFENDANTS' CONCERT OF ACTION**

6   152. Plaintiffs restate and incorporate herein by reference the foregoing allegations

7   contained in this Complaint.

8   153. Plaintiffs further assert that Defendants SALZMAN, SCHMIDT, SAMPAIO and the

9   other Defendants are liable for acts and/or omissions pursuant to the Restatement (Second) of

10  Torts, Section 876, under the legal doctrine of concert of action, and as agents of these entities,

11  under which theories Plaintiff seeks damages from all Defendants jointly and severally.

12  154. The foregoing fraud and conspiracy perpetrated by the Defendants, jointly and

13  severally, was aggravated by the kind of fraud for which New York law allows the imposition of

14  punitive and exemplary damages, in that the Defendants (in concert and conspiracy with each

15  other) made material representations that were false, knowing that they were false or with

16  reckless disregard as to their truth and as positive assertions, with the intent that Plaintiff should

17  rely on these representations.  In fact, Plaintiff did rely on the representations and suffered injury

18  and damages as a result of this reliance.

19  WHEREFORE, Plaintiffs JBWV and THEILER seek compensatory, punitive and

20  exemplary damages in the maximum amount authorized by New York law.

21                  **I. NINTH CAUSE OF ACTION – CONSTRUCTIVE TRUST**

22  155. Plaintiffs restate and incorporate herein by reference the foregoing allegations

44

1   contained in this Complaint.

2       156. Through their escrow agent, Defendant SALZMAN acting through his alter ego,

3   SALZMAN P.C., the Defendants hold title to Plaintiffs' property in SALZMAN P.C.'s attorney

4   trust account with Bank of America, N.A. account number 9505383271 in Great Neck, Nassau

5   County, New York which, on information and belief, were subsequently withdrawn from that

6   account pursuant to Defendant SALZMAN's instructions. Defendants hold title to Plaintiffs'

7   property subject to an equitable duty to convey it to Plaintiff on the grounds that they would be

8   unjustly enriched if they were permitted to retain it because their interest in such property has

9   been obtained from a diversion of funds by fraudulent means from Plaintiffs caused, first, by the

10  actions and omissions of Defendant SCHMIDT and, second, by Defendant SALZMAN's

11  violation of express instructions as well as elementary duty of care incumbent upon an attorney

12  licensed to practice law in the State of New York.

13      157. Defendants have obtained their interest in Plaintiffs' funds in an unconscientious

14  manner and they cannot justly retain Plaintiffs' property while at the same time avoiding their

15  legitimate debts to the Plaintiffs.

16      158. By reason of the fraudulent and otherwise wrongful manner in which the

17  Defendants, or any of them, obtained their alleged right, claim or interest in and to Plaintiffs'

18  property, Defendant SALZMAN, and each of the Defendants, have no legal or equitable right,

19  claim or interest therein, but, instead, Defendant SALZMAN, and each of the other Defendants

20  who have received proceeds of Plaintiffs' property are involuntary trustees holding said property

45

1  and profits therefrom in constructive trust for Plaintiffs with the duty to convey the same to

2  Plaintiffs forthwith.

3       159. As a result of the foregoing, a constructive trust should be imposed on Plaintiffs'

4  property held in Defendant SALZMAN's attorney trust account with Bank of America, N.A.

5  account number 9505383271 and on any other financial accounts of other Defendants, their

6  officers, agents, servants, employees, and attorneys, and those persons in active concert or

7  participation with them who receive actual notice of the Court's order where such property may

8  have been transferred to pursuant to Defendants' instructions.

9       WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them, for an

10  order  declaring that Defendants hold Plaintiffs' property as constructive trustees for the benefit

11  of Plaintiff JBWV in the amount of $3,600,000.00 plus interest at the statutory rate from March

12  19, 2008, and for the benefit of Plaintiff THEILER in the amount of $200,000.00 plus interest at

13  the statutory rate from March 20, 2008, for the costs of suit incurred herein, and for such other

14  and further relief as the court may deem proper.

15                          **J. TENTH CAUSE OF ACTION –**

16              **VIOLATION OF THE FEDERAL SECURITIES LAWS**

17       160. Under the test announced in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100,

18  90 L.Ed. 1244 (1946), the Private Placement Program offered to Plaintiffs and in which they

19  were induced by the Defendants to invest was a "security." *Howey* held an instrument to be an

20  "investment contract," and thus a "security," if "the scheme involves an investment of money in a

21  common enterprise with profits to come solely from the efforts of others." *Howey*, 328 U.S. at

46

301, 66 S.Ct. at 1104.

### a.   Count I -Fraud

### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

161. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

162. From at least January 2008 through present, Defendants, acting in concert, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate and international commerce and by use of the mails and electronic means of communication, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

163. In engaging in such conduct, the Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with severe reckless disregard for the truth.

164. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### b. Count II--Fraud

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act

### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

165. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

1   166. From at least January 2008 through present, Defendants, acting in concert, in the

2   offer and sale of the securities described herein, by use of means and instruments of

3   transportation and communication in interstate and international commerce and by use of the

4   mails and electronic means of communication, directly and indirectly:

5   a) obtained money and property by means of untrue statements of material fact and omissions to

6   state material facts necessary in order to make the statements made, in light of the circumstances

7   under which they were made, not misleading; and

8   b) engaged in transactions, practices and courses of business which would and did operate as a

9   fraud and deceit upon the purchasers of such securities,

10   all as more particularly described above.

11   167. By reason of the foregoing, the Defendants, acting in concert, directly and indirectly,

12   have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the

13   Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

14   **c. Count III--Fraud**

15   **Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]**

16   **and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

17   168. Plaintiffs restate and incorporate herein by reference the foregoing allegations

18   contained in this Complaint.

19   169. From at least January 2008 through present, Defendants, acting in concert, n

20   connection with the purchase and sale of securities described herein, by the use of the means and

48

instrumentalities of interstate and international commerce and by use of the mails and electronic means of communication, directly and indirectly:

a) employed devices, schemes, and artifices to defraud;

b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c) engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

170. The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. In engaging in such conduct, the Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with severe reckless disregard for the truth.

171. By reason of the foregoing, the Defendant, acting in concert, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**d. Count IV--Unregistered Offering Of Securities:**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**[15 U.S.C. §§ 77e(a) and 77e(c)]**

49

172. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

173. From at least January 2008 through present, the Defendants, acting in concert, directly and indirectly, have:

a) made use of the means or instruments of transportation or communication in interstate and international commerce or of the mails to sell the securities described herein, through the use or medium of any prospectus or otherwise, when a registration statement was not in effect as to such securities;

b) carried securities or caused such securities, as described herein, to be carried through the mails or in interstate and international commerce, by electronic and other means or instruments of transportation, for the purpose of sale or for delivery after sale, when a registration statement was not in effect as to such securities; and

c) made use of the means or instruments of transportation or communication in interstate and international commerce or of the mails and electronic means of communication to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, the securities described herein, without a registration statement having been filed as to such securities.

174. These acts include, but are not limited to, the activities described in this Complaint.

175. By reason of the foregoing, Defendants, acting in concert, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the

50

Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### e. Count V-- Effecting Securities Transactions For
### The Account Of Others Without Being Registered
### With The Securities And Exchange Commission As A Broker-Dealer
### Violations of Section 15(a) of the Exchange Act
### [15 U.S.C. § 78o(a)]

176. Plaintiffs restate and incorporate herein by reference the foregoing allegations contained in this Complaint.

177. From at least January 2008, Defendants, acting in concert, used the mails and the means and instrumentalities of interstate and international commerce, to effect transactions in, or induced or attempted to induce the purchase or sale of securities, without registering with the Commission as a broker, as more particularly described above.

178. By reason of the transactions, acts, omissions, practices and courses of business set forth herein, Defendants have violated, is violating or are about to violate Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

WHEREFORE Plaintiffs respectfully request that this Court:

**1. Declaratory Relief**

Declare, determine and find that the Defendants committed the violations of the federal securities laws alleged in this Complaint.

**2. Temporary Restraining Order, Preliminary and Permanent Injunctive Relief**

1   Issue a Temporary Restraining Order and Preliminary and Permanent Injunctions, restraining and

2   enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those

3   persons in active concert or participation with them who receive actual notice of the order of

4   injunction, by personal service or otherwise, and each of them, whether as principals or as aiders

5   and abettors, from violating, directly or indirectly: Sections 10(b) of the Exchange Act [15

6   U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder; Section 17(a)(1) of the

7   Securities Act [15 U.S.C. § 77q(a)(1)]; Sections 17(a)(2) and 17(a)(3) of the Securities Act

8   [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]; Sections 5(a) and 5(c) of the Securities Act [15 U.S.C.

9   §§ 77e(a) and 77e(c)]; and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

10   **3.  Asset Freeze and Sworn Accounting**

11   Issue an Order freezing the assets of Defendants, including SALZMAN's attorney trust account

12   no. 9505383271 with the Bank of America in Great Neck, New York until further Order of the

13   Court and requiring the Defendants to file sworn accountings with the Court.

14   **4.  Records Preservation**

15   Issue an Order requiring the Defendants to preserve any records related to the subject matter of

16   this lawsuit that are in their custody or possession or subject to their control.

17   **5.  Appointment of Receiver**

18   Appoint a receiver over all assets held in the name of the Defendants to (1) preserve the status

19   quo; (2) ascertain the financial condition of the Defendants; (3) prevent loss, damage and injury

20   to investors; and (4) preserve the books, records and documents of the Defendants.

21   **6.  Disgorgement**

22   Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment

1   interest, resulting from the acts or courses of conduct alleged in this complaint.

2   **7.  Further Relief**

3   Grant such other and further relief as may be necessary and appropriate.

4   ### K. ELEVENTH CAUSE OF ACTION - RICO VIOLATIONS

5   **a.      VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND**

6   **CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1962(C) AND 1962(D)**

7   179. Plaintiffs restate and incorporate herein by reference the foregoing allegations

8   contained in this Complaint.

9   180. This claim for relief is asserted against each of the Defendants and arises under 18

10  U.S.C. § 1962(c) and (d) of RICO, which provide:

11  (c) It shall be unlawful for any person employed by or associated with any enterprise

12  engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

13  participate, directly or indirectly, in the conduct of such enterprise's affairs through a

14  pattern of racketeering activity....

15  (d) It shall be unlawful for any person to conspire to violate any of the provisions of

16  subsection . . . (c) of this section.

17  181. At all relevant times, each of the Defendants was a "person" within the meaning of

18  18 U.S.C. § 1961(3), as each of the Defendants was "capable of holding a legal or beneficial

19  interest in property."

20  182. At all times relevant, Defendants have constituted an "enterprise", within the

21  meaning of 18 U.S.C. §1961(4). This enterprise, is an ongoing organization whose constituent

22  elements function as a continuing unit in maximizing fundraising, and in concert, with the

knowledge and consent of its members, to bilk investors, including Plaintiffs, out of their incomes and net worth, including, but not limited to, the theft of the value of Plaintiffs' payments to the Defendants and the deprivation of their alternative income-generating opportunities. The Defendants' enterprise has an ascertainable structure and purpose beyond the scope of Defendants' predicate acts and their conspiracy to commit such acts. The Defendants' criminal Enterprise has engaged in, and its activities have affected, interstate and foreign commerce. The Defendants' enterprise continues to date through the concerted activities of Defendants to actively disguise the nature of their wrongdoing, to conceal the proceeds thereof, and to conceal Defendants' participation in the enterprise in order to avoid and/or minimize their exposure to criminal and civil penalties and damages.

183. The conduct of these Defendants, as set forth herein, had no legitimate business purpose or activity. Defendants have misrepresented the financial results of their activities, not only to Plaintiffs, but also to others, in furtherance of the pattern of racketeering of the enterprise.

184. Each Defendant has been associated with the Defendants' criminal enterprise. Each Defendant helped to direct the enterprise's actions and manage its affairs. Each Defendant conducted or participated, directly or indirectly, in the conduct of the Defendants' criminal enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The Defendants' pattern of racketeering activity dates from at least January 2008 and continues to the present, and threatens to continue in the future.

185. The Defendants' criminal enterprise exists separate and apart from the Defendants' racketeering acts. It is an ongoing organization whose members have been in frequent communication and coordination. It has a consensual decision-making structure used to

coordinate strategy, suppress the truth about the theft of services, with the knowledge and consent of its members, bilk investors, including Plaintiffs, out of their incomes and net worth, and otherwise further Defendants' fraudulent scheme.

186. Each Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity," in violation of 18 U.S.C. § 1962(c). The Defendants' pattern of racketeering activity dates from 1997 through the present and threatens to continue in the future.

187. The Defendants' multiple predicate acts of racketeering include:

(i). Mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The Defendants engaged in schemes to defraud members of the public and private and governmental entities by means of false or fraudulent pretenses, representations, or promises, including, but not limited to, Plaintiffs. Defendants executed or attempted to execute such schemes through the use of the United States mails and through transmissions by wire, internet and other electronic means in interstate commerce.

(ii). Predicate acts include sending and communicating fraudulent factual representations through electronic means to promote and advertise the Defendants' criminal enterprise, for purposes of recruiting more investors or lenders in violation of 18 U.S.C. § 1343 "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits." Defendants caused "to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, ... writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice".

(iii). The tactics include the use of facilities in interstate or foreign commerce to distribute

55

1  the proceeds of unlawful activity and otherwise to promote, manage, establish, carry on or

2  facilitate the promotion, management, establishment, or carrying on of unlawful activity, in

3  violation of 18 U.S.C. § 1952.

4      (iv). The predicate acts also include engaging in monetary transactions involving the

5  proceeds of crime in violation of 18 U.S.C. § 1957, which prohibits "knowingly engag[ing] or

6  attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value

7  greater than $10,000 and is derived from specific unlawful activity," including mail and wire

8  fraud. 18 U.S.C. §§ 1957(f)(3) and 1956 (c)(7)(A).

9      188. These acts form a "pattern" of racketeering activity. They have been related in their

10  common objectives of maximizing the wealth or welfare of the Defendants' criminal Enterprise,

11  suppressing the truth concerning the abuse and theft of property taking place from, among others,

12  the Plaintiffs. These acts have had the same or similar purposes, results, participants, victims and

13  methods of commission. The acts have been consistently repeated and are capable of further

14  repetition.

15      189. Each Defendant also conspired to violate 18 U.S.C. § 1962(c), in violation of 18

16  U.S.C. § 1962(d).

17      190. Plaintiffs relied to their detriment on Defendants' misrepresentations and have been

18  injured in their property by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d),

19  because Plaintiffs have been required to incur significant costs and expenses attributable to

20  misrepresentations and inducements by the Defendants' criminal enterprise, and because of the

21  Defendants' theft of the value of Plaintiff's payments and alternative income-generating

22  opportunities. In the absence of the Defendants' violation of 18 U.S.C. §§ 1962(c) and (d), these

56

1    damages, costs and expenses would have been substantially reduced or eliminated altogether.

2        191. Defendants are uniquely positioned to possess the information, of which Plaintiffs

3    should have discovery, detailing exactly which of them constituted "enterprise" RICO

4    participants and which of them constituted RICO "persons" in the furtherance of Defendants'

5    RICO conspiracy.

6        192. Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs are entitled to bring this

7    action and to recover herein treble damages, the costs of bringing this suit, and reasonable

8    attorneys' fees.

9    **b.    VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND CORRUPT**

10   **ORGANIZATIONS ACT (RICO) -- 18 U.S.C. §§ 1962(A) AND (D)**

11       193. Plaintiffs restate and incorporate herein by reference the foregoing allegations

12   contained in this Complaint.

13       194. This claim for relief is asserted against each of the Defendants, and arises under 18

14   U.S.C. § 1962(a) and (d) of RICO, which provide:

15       (a) It shall be unlawful for any person who has received any income derived,

16       directly- or indirectly, from a pattern of racketeering activity... to use or invest,

17       directed, or indirectly, any part of such income, or the proceeds of such income, in

18       acquisition of and, interest in, or the establishment or operation of, any enterprise which

19       is engaged in, or the activities of which affect, interstate or foreign commerce.

20       (d) It shall be unlawful for any person to conspire to violate any of the provisions

21       of subsection (a). . . of this section.

22       195. At all relevant times, each of the Defendants was a "person" within the meaning of

18 U.S.C. § 1961 (3), as each of the Defendants was "capable of holding a legal or beneficial interest in property."

196. At all relevant times Defendants have constituted an enterprise within the meaning of 18 U.S.C. § 1961(4). The Defendants' criminal enterprise and its activities have an effect on interstate commerce in that the enterprise is engaged in the business of soliciting funds in the United States and also, in fact, in other parts of the world.

197. Defendants have engaged in a pattern of racketeering activity which dates from at least January 2008 through the present and threatens to continue in the future. The Defendants' multiple predicate acts of racketeering, which generated income for the Defendants, are set forth above and are more particularly described therein.

198. Defendants have used or invested their illicit proceeds, generated through the pattern of racketeering activity, directly or indirectly in the acquisition of an interest in, or the establishment or operation of, each enterprise in violation of 18 U.S.C. § 1962(a). Defendants' use and investment of these illicit proceeds in each enterprise is for the specific purpose and has the effect of suppressing and concealing information regarding the incidents of fraudulent misrepresentation and inducement and theft of Plaintiffs' property and alternative income-generating opportunities, in large part to further their goals of recruitment of more investors for the benefit of the Defendants' criminal enterprise.

199. Each Defendant also conspired to violate 18 U.S.C. § 1962(a), in violation of 18 U.S.C. § 1962(d).

200. Plaintiffs have been injured in their property by reason of Defendants' violations of 18 U.S.C. § 1962(a) and (d) in that Plaintiffs have been required to incur significant costs and

expenses attributable to the Defendants' criminal enterprise and as a result thereof, as well as the theft of the value of Plaintiffs' property and alternative income-generating opportunities. Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs are entitled to bring this action and to recover herein treble damages, the costs of bringing this suit and reasonable attorneys' fees.

## c. DEFENDANTS CONSTITUTE A SINGLE BUSINESS ENTERPRISE

201. Defendants, through their internal structures and their relation to each other, have integrated their resources to achieve a common purpose, and do not operate as functionally separate entities. Thus, they constitute a single business enterprise, or a single enterprise. The single enterprise nature is also evidenced by the use of substantially uniform, coordinated fraudulent and fictitious business proposals and by Defendant SALZMAN's centralized control of the use of all the Defendant's criminal enterprise's proceeds, among other things. The conduct of Defendants, as set forth herein, constitutes an enterprise formed for the misappropriation of funds as part of the scheme and artifice.

202. Defendant's organizations constitute enterprises as defined in 18 U.S.C. § 1961(4): "A group of persons associated in fact, although not a legal entity."

203. Beginning in or about January 2008, Defendants initiated a scheme and artifice by which they created the false appearance to Plaintiffs and others that they were engaged in providing legitimate financial services.

204. Rather than engaging in lawful business activities, Defendants were involved in an elaborate, deceptive and unlawful exchange of funds between themselves for the purpose and effect of obtaining unlawful financial gains and to defraud Plaintiffs and others of substantial funds.

205. At all times relevant hereto, Defendants' enterprises operated in this District and other locations and engaged in activities and services affecting interstate and international commerce.

206. On information and belief, the scheme and artifice of Defendant's enterprise was to deceive Plaintiffs and others by inducing them to deposit funds in escrow in reliance upon Defendant SALZMAN's and SALZMAN P.C.'s status as persons licensed to practice law in the State of New York and regulated by the laws and authorities pertaining thereto, for the purpose of securing loans for trading activities which they never intended to close, and subsequently misappropriating the escrowed funds.

207. In reality, the escrow arrangements were nothing more than a scheme and artifice by which Defendants engaged in unlawful business activities, a consequence of which was Plaintiffs' sustaining financial losses, while Defendants relied on the charade of legitimate business transactions to confuse, delay and deter Plaintiffs from discovering, preventing or prosecuting their fraud.

208. As a consequence of Defendants' single business or single interest enterprise, all Defendants are jointly and severally liable for the damages inflicted on Plaintiffs by Defendants, and all of them are independently subject to the jurisdiction of this Court as a result of their status as a single business or single interest enterprise.

## d. DEFENDANTS HAVE USED THE SAME ENTERPRISE, SCHEME, AND ARTIFICE

## TO DEFRAUD OTHERS

209. Defendants SALZMAN and SALZMAN P.C. were sued by at least three other parties in at least three separate actions in at least three other jurisdictions to date on allegations

60

substantially very similar and in some cases almost identical to the allegations set forth herein.

210. In the U.S. District Court for the Southern District of Florida, West Palm Beach Division, Defendants SALZMAN and SALZMAN P.C. were sued by Palm Beach Strategic Income, LP. Defendants SALZMAN and SALZMAN P.C. are alleged to have improperly released escrowed funds under very similar circumstances as those alleged herein. Defendant SINO was involved in the transaction at issue in that case as well.

211. Defendants SALZMAN, SALZMAN P.C. and SINO, among others, were sued in the District Court of Harris County, Texas. The complaint in that case alleges that the Defendants engaged in a fraudulent scheme that was substantially similar to the fraudulent scheme alleged herein.

212. Defendants SALZMAN, SALZMAN P.C. and SINO, among others, were sued in the U.S. District Court for the Northern District of Georgia by Ken Gordin. Defendants SALZMAN and SALZMAN P.C. are alleged to have improperly released escrowed funds under very similar circumstances as those alleged herein and Defendant SINO was involved in a similar capacity as in the instant case. The fraudulent scheme alleged in that complaint was substantially similar to the fraudulent scheme alleged herein.

## VI.

## **PLAINTIFF'S DAMAGES**

213. Damages include but are not limited to the following:

a. As the result of Defendants' conduct described above, Plaintiffs were injured in their property because the amount of $3,600,000.00 was unlawfully obtained from Plaintiff JBWV under a contractual promise to provide at least $120,000,000.00 and the amount of $1,200,000.00

was unlawfully obtained from Plaintiff THEILER under a contractual promise to provide at least $40,000,000.00.

b. Plaintiffs have suffered irreparable harm and sustained damages as a result of Defendants' unlawful enterprises, and these damages were a natural and foreseeable consequence of Defendants' actions.

c. Plaintiff JBWV seeks at least $120,000,000.00 for its actual damages.

d. Plaintiff THEILER seeks at least $40,000,000.00 for his actual damages.

e. Plaintiffs JBWV and THEILER each seek punitive and exemplary damages in the maximum amount authorized by New York law in order to punish and deter the outrageous conduct taken in heedless and reckless disregard for the property of Plaintiffs and, as a result of Defendants' conscious indifference to the rights, welfare and property interests of Plaintiffs in violation of the laws of the State of New York, other states and the United States.

f. Plaintiffs JBWV and THEILER each seek treble damages and attorney's fees as provided by the RICO Statute.

## VII.

## JURY DEMAND

214. Plaintiffs hereby request and demand a trial by jury of any issue triable of right by a jury.

## VIII.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

215. Plaintiffs herein claim prejudgment and post-judgment interest in accordance with applicable law.

## IX.

## **PRAYER FOR RELIEF**

216. WHEREFORE, Plaintiffs JBWV and THEILER respectfully pray for the following relief:

1.    For Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants named herein committed the violations alleged herein.

2.    For a Temporary Restraining Order and Preliminary and Permanent Injunctions enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order of injunction, by personal service or otherwise, and each of them, whether as principals or as aiders and abettors, from violating, directly or indirectly, Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. § 78j(b) and 15 U.S.C. § 78o(a)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

3.    For an Order requiring the Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody or possession or subject to their control.

4.  For appointment of a receiver over all assets held by Defendants STANLEY P. SALZMAN, P.C., PFB, BHW, AMBIENTE, BLACKSTONE, CBOD, SINO, and IT'S to (1) preserve the status quo; (2) ascertain the financial condition of these Defendants; (3) prevent loss, damage and injury to investors; and (4) preserve the books, records and documents of these Defendants.

5.  For an order requiring the Defendants to (a) disgorge all ill-gotten gains or unjust enrichment, with prejudgment interest thereon, pursuant to the RICO Act and to effect the remedial purposes of the federal securities laws; (b) refrain from engaging in the same kinds of behavior as the alleged criminal enterprises; and (c) effect the dissolution of all criminal enterprises under their control.

6.  For an Order imposing a constructive trust on the property of the Plaintiffs or its proceeds held by the Defendants, in an amount of $3,600,000.00 for the benefit of Plaintiff JBWV.

7.  For an Order imposing a constructive trust on the property of the Plaintiffs or its proceeds held by the Defendants, in an amount of $200,000.00 for the benefit of Plaintiff THEILER.

8.  For judgment against all Defendants, jointly and severally, for general damages in favor of Plaintiff JBWV in the amount of $120,000,000.00 according to proof at trial;

9.  For judgment against all Defendants, jointly and severally, for general damages in favor of Plaintiff THEILER in the amount of $40,000,000.00 according to proof at trial;

64

10.   For consequential damages, jointly and severally, in favor of Plaintiffs JBWV and THEILER, according to proof at trial;

11.   For exemplary and punitive damages, jointly and severally, in favor of Plaintiffs JBWV and THEILER, according to proof at trial;

12.   For treble damages and all other damages permitted by law, jointly and severally, in favor of Plaintiffs JBWV and THEILER, according to proof at trial;

13.   For attorneys' fees;

14.   For expert witness fees;

15.   For costs for copies of depositions;

16.   For costs of court;

17.   For pre- and post-judgment interest;

18.   For all other costs and expenses permitted by law;

19.   For all other and further relief that the Court deems just and proper.

Dated: April 24, 2008                    Respectfully submitted,


Ivo George Caytas, Esq. (IC 3947)
Caytas & Associates
146 West 57th Street, 57th Floor
New York, N.Y. 10019-3301
Telephone: (917) 805-4120
Telecopier: (917) 591-9340
Email: ivocaytas@yahoo.com
Attorney for Plaintiffs

FEDERAL REPUBLIC OF GERMANY
CITY OF KIEL

## VERIFICATION
## ON BEHALF OF PLAINTIFF HOLGER THEILER

Holger Theiler, being duly sworn, and aware of the penalties of perjury, deposes and says:

My name is Holger Theiler. I am a German citizen with a place of business at Kamillenweg 21, 24217 Schönberg, Federal Republic of Germany. I am of full age.

I am one of the plaintiffs in the above entitled action styled *Johannes Baumgartner Wirtschafts- und Vermögensberatung GmbH et al. v. Stanley P. Salzman et al.* in the U.S. District Court for the Eastern District of New York. I have read the foregoing complaint and know the contents thereof. The same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Dated:  Kiel, May _12_, 2008



_____
HOLGER THEILER
Kamillenweg 21
24217 Schönberg
Federal Republic of Germany
Tel. +49-4344-1827

Sworn to and subscribed before me this ___12___ day of May, 2008:

**Nummer 168 der Urkundenrolle für 2008**

Umstehende, heute vor mir vollzogene Namensunterschrift

des Herrn Holger Theiler,

geboren am 27.03.1952,

24217 Schönberg, Kamillenweg 21

ausgewiesen durch PA Nr.: 1146087450

beglaubige ich hiermit.



Kiel, den 13.05.2008



*(signature)*
Notarvertreter

Kostenberechnung gem. § 154 KostO:

Wert gem. 45 KostO: 3.000,00 EUR

| | |
|---|---|
| 5/20 Gebühr gem. §45 KostO | 10,00 EUR |
| Beglaubigung von Unterschriften | |
| zzgl. 19% Umsatzsteuer | 1,90 EUR |
| Endsumme | 11,90 EUR |

*(signature)*
Notarvertreter

APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. Land: Bundesrepublik Deutschland

Diese öffentliche Urkunde

2. ist unterschrieben von .... *Stephan Fitsch*

3. in seiner Eigenschaft als *amtlich bestellter Vertreter des Notars Klaus Hansen-Kohlmorgen in Kiel*

4. sie ist versehen mit dem Siegel/Stempel des *Notars Klaus Hansen-Kohlmorgen in Kiel*

Bestätigt

5. in Kiel ........................................ 6. am *14.05.2008*

7. durch die ständige Vertreterin des Präsidenten des Landgerichts Kiel
in Kiel, die Justizamtfrau Petra Nicolaisen

8. unter Nr. *764/2008*

9. Siegel/Stempel:                    10. Unterschrift:

*Petra Nicolaisen*

(round seal: LANDGERICHT KIEL · 87 ★)

Case 2:09-cv-00582-JS-AKT Document 1 Filed 06/27/09 Page 69 of 73



1. Nom / Surname / Domicile
SCHÖNBERG

2. Prénom / Surname / Prénoms

3. Nom / Residency / Domicile

4. Taille / Height / Taille
18.5 cm

5. Couleur des cheveux et des yeux / Colour des yeux
BLEU/BRUN

6. Signe particulier / Special marks / Signes particuliers

## 15. Kinder/Children/Enfants

Name(n) und Vorname(n)
Surname and given name(s)
Nom et prénoms

Geburtstag(e)
Date of birth
Date de naissance

Geschlecht
Sex
Sex

KEINE EINTRAGUNG---

Amtliche Vermerke

Página reservada a las autoridades competentes para expedir el pasaporte

Forbeholdt de pasudstedende myndigheder.

Page reserved for issuing authorities

Page réservée aux autorités compétentes pour délivrer le passeport

Página riservata all'autorità

Pagina reservada às autoridades competentes para a emissão do passaporte

Officiële aanmärkningar

Für alle Länder / For all countries / Pour tous pays

Ausgestellt (Ort) daten Erteilt in

SCHÜNEBERG

22 JANUAR 2001

DER IM VORSTEHER

REPUBLIC OF AUSTRIA                               )
CITY OF VIENNA                                    )      s.s.:
CONSULATE OF THE UNITED STATES OF AMERICA         )

## VERIFICATION
## ON BEHALF OF PLAINTIFF JOHANNES BAUMGARTNER
## WIRTSCHAFTS- UND VERMÖGENSBERATUNG GMBH

Johannes Baumgartner, aware of the penalties of perjury, deposes and says:

My name is Johannes Baumgartner. I am an Austrian citizen with a place of business at Weyringergasse 8, 1040 Vienna, Austria. I am of full age.

I am a controlling shareholder and the duly elected managing director and I have sole signatory authority on behalf Johannes Baumgartner Wirtschafts- und Vermögensberatung GmbH ("**JBWV**"), an Austrian limited liability company incorporated and domiciled in Vienna who is the plaintiff in the above entitled action styled *Johannes Baumgartner Wirtschafts- und Vermögensberatung GmbH v. Stanley P. Salzman et al.* in the U.S. District Court for the Eastern District of New York. I have read the foregoing complaint and know the contents thereof. The same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Dated: April _25_, 2008

For and on behalf of Johannes Baumgartner Wirtschafts- und Vermögensberatung GmbH:

JOHANNES BAUMGARTNER
Johannes Baumgartner Wirtschafts- und Vermögensberatung GmbH
Weyringergasse 8
1040 Vienna
Austria
Tel. +43 1 503 8300
Facsimile: +43 1 503 8300 20

Gebühr in Höhe von € 13,20 entrichtet.
Notare Huppmann & Poindl

B.R.Zl. 3357/2008/cl

Die Echtheit der Firmazeichnung des Herrn Johannes BAUMGARTNER, als Geschäftsführer der Johannes Baumgartner Wirtschafts- & Vermögensberatungs- GmbH , 1040 Wien, Weyringergasse 8, wird bestätigt. ------------------------------- Aufgrund der heute im elektronischen Wege vorgenommenen Einsichtnahme in das Firmenbuch des Handelsgerichtes Wien bestätige ich, dass Herr Johannes Baumgartner als Geschäftsführer berechtigt ist, die unter FN 267760 s eingetragene Johannes Baumgartner Wirtschafts- & Vermögensberatungs- GmbH, mit dem Sitz in Wien, selbständig zu vertreten. ----------------------------------------------------------- Wien, am fünfundzwanzigsten April zweitausendacht. ----------------------------- ---------------------------------------------------------------------------------

B.R.Zl. 3357/2008/cl

This is to certify the authenticity of the overleaf execution of signature of Johannes Baumgartner Wirtschafts- & Vermögensberatungs- GmbH, 1040 Wien, Weyringergasse 8, by Johannes BAUMGARTNER as Executive Director. ------------- I do herewith certify and attest pursuant to Section 89 a Notaries Act, that today hereof I inspected the Commercial Register of the Vienna Commercial Court which is kept by electronic data processing and from such inspections I declare, that Johannes BAUMGARTNER as Executive Director is entitled to sign independently on behalf of Johannes Baumgartner Wirtschafts- & Vermögensberatungs- GmbH, with the seat in Vienna, recorded under Court File No. FN 267760 s . -------------------- Vienna, this twentyfifth day of twothousandeight. ----------------------------------------

Dr. Christoph PFARRHOFFER
SUBSTITUIERT DEN NOTAR
Dr. KLEMENS HUPPMANN
IN WIEN - INNERE STADT

Neue Adresse:
1010 Wien, Schmerlingplatz 11

Gebühr € ...6.——
entrichtet

29. April 2008

# Apostille
(Convention de La Haye du 5 octobre 1961)

1. Land: . . . . . . . . . . . . . **ÖSTERREICH**
   Pays:

Diese öffentliche Urkunde / Le présent document officiel

2. ist unterzeichnet von . . **Dr. Christoph Pfaffenberger**
   á été signé par

3. in seiner Eigenschaft als .. **Substitut des öffentlichen Notars**
   agissant en qualité de

4. Ist versehen mit dem Siegel/Stempel des (der) ..Dr. Klemens
   le sceau/timbre qui y figure est celui de          Huppmann

Bestätigt / Ainsi fait

5. in . . . . **WIEN**                 6. am .....  **29. April 2008**
   á(lieu)                             le (date)

7. durch / par (autorité d´attestation)   8. unter Zl.**101Jv 4637/08**
   den Präsidenten des Landesgerichtes für   sous N° du registre
   ZRS Wien, 1040 Wien, Schwarzenbergplatz 11

9. Siegel/Stempel . . .            Für die Präsidentin:
   Sceau ou timbre                 10. Unterschrift.....
                                   Signature
                                   FOI Fabsits



