UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
JOHANNES BAUMGARTNER WIRTSCHAFTS UND
VERMOGENSBERATUNG GMBH, and HOLGER KNUT
THEILER

                                        <u>MEMORANDUM AND ORDER</u>
                    Plaintiffs,          08-CV-2582 (JS)(AKT)


        -against-


STANLEY P. SALZMAN, ESQ., ET AL.,


                    Defendants.
-------------------------------------x
APPEARANCES:
For Plaintiffs:          Ivo G. Caytas, Esq.
                         Caytas & Associates
                         146 West 57th Street, Suite 57d
                         New York, NY 10019


For Defendants:
Postbank Defendants      Howard Zelbo, Esq.
                         Cleary Gottlieb Steen & Hamilton
                         One Liberty Plaza
                         New York, NY 10006


FIFO Trust Ltd.          Charles Hyman, Esq.
                         Kissel Hirsch & Wilmer LLP
                         580 White Plains Road, 5th Floor
                         Tarrytown, NY 10591


Ayuk H. Bolukbasi        Ayuk H. Bolukbasi, <u>pro</u> <u>se</u>
                         Bagdat Cad. Nazli Apt. No:78 K:2 D:7
                         Kiziltoprak – Istanbul
                         Republic of Turkey


Murat Ozkan              Murat Ozkan, <u>pro</u> <u>se</u>
                         Hamam sok. 33/33
                         Goztepe – Istanbul
                         Republic of Turkey


Hakan Metin              Hakan Metin, <u>pro</u> <u>se</u>
                         Breslauer Strasse 15, 59423 Unna
                         Federal Republic of Germany


Other Defendants         No appearances.

SEYBERT, District Judge:

On June 27, 2008, Plaintiffs Johannes Baumgartner Wirtschafts-und Vermögensberatung GmbH ("Baumgartner") and Holger Knut Theiler ("Holger") (collectively, "Plaintiffs") commenced this action against numerous Defendants, alleging a multi-million dollar RICO and securities fraud scheme. Defendants Aykut Hasan Bolukbasi, <u>pro</u> <u>se</u>, Murat Ozkan, <u>pro</u> <u>se</u>, Hakan Metin, <u>pro</u> <u>se</u>, have moved to dismiss for lack of personal jurisdiction.

For the following reasons, these motions (Docket Nos. 103, 104, 110) are DENIED.

DISCUSSION

I. <u>Standard Of Review On A Motion To Dismiss For Lack of Personal Jurisdiction</u>

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996). When, as is the case here, the plaintiff has not undertaken jurisdictional discovery, and the Court "[has chosen] not to conduct a full-blown evidentiary hearing on the motion," the plaintiff need only "make a <u>prima</u> <u>facie</u> showing that jurisdiction exists." <u>Penguin Group (USA) Inc. v. American Buddha</u>, 609 F.3d 30, 34-35 (2d Cir. 2010) (jurisdictional

discovery, internal citations and quotations omitted); <u>Grand River Enterprises Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005) (evidentiary hearing, internal citations and quotations omitted). Such a showing "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." <u>Penguin Group (USA) Inc.</u>, 609 F.3d at 35 (internal citations and quotations omitted). In deciding whether the plaintiff has met its burden, the Court must construe "pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." <u>Porina v. Marward Shipping Co., Ltd.</u>, 521 F.3d 122, 126 (2d Cir. 2008). Additionally, the Court must "draw all reasonable inferences in the plaintiff's favor." <u>Garg v. Winterthur</u>, 525 F. Supp. 2d 315, 318 (E.D.N.Y. 2007).

Finally, in deciding personal jurisdiction questions, district courts must conduct a two part analysis, looking first to the state's long arm statute and then analyzing whether jurisdiction comports with federal due process. <u>Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.</u>, 264 F.3d 32, 37 (2d Cir. 2001). The two part analysis is sequential; if the district court finds no basis for long arm jurisdiction, it need not engage in a federal due process analysis. <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997).

A.  <u>Personal Jurisdiction As To Messrs. Bolukbasi, Ozkan, and Metin</u>

Plaintiffs' Second Amended Complaint names Messrs. Bolukbasi, Ozkan, and Metin as Defendants. Although the Second Complaint's 300 paragraphs plead an "advanced fee" securities fraud in significant detail, its factual allegations against Messrs. Bolukbasi, Ozkan, and Metin are relatively sparse. These factual allegations, in their entirety, are as follows: (1) Messrs. Bolukbasi, Ozkan, and Metin are "Turkish organized crime figures," (SAC ¶ 71); (2) Mr. Metin was "actively involved in promoting similar schemes in the U.S. and elsewhere" (SAC ¶ 71); (3) Messrs. Bolukbasi and Ozkan were unjustly enriched and engaged in constructive fraud when former Defendant Stanley P. Salzman converted almost $1.6 million of Plaintiffs' money and disbursed it to them, without Messrs. Bolukbasi or Ozkan providing any valuable consideration or performing any useful services (SAC ¶¶ 179-186); (4) Messrs. Bolukbasi, Ozkan, and Metin participated in forging some of the documents that induced Plaintiffs to invest in the scheme (SAC ¶ 202); and (5) Mr. Bolukbasi committed unspecified wire frauds (SAC ¶ 271).

In response to Plaintiffs' Second Amended Complaint, Messrs. Bolukbasi, Ozkan and Metin submitted substantively identical letters. (Docket Nos. 103, 104, 110). In these letters, Messrs. Bolukbasi, Ozkan and Metin set forth that: (1)

4

they are Turkish citizens who reside in Europe; (2) they neither conduct business in the United States nor own property in the United States; and (3) Plaintiffs have commenced related proceedings against them in Turkey. Each of these letters asked the Court to dismiss this action against them.

By Electronic Orders dated March 1 and 10, 2010, the Court construed these letters as motions to dismiss for lack of personal jurisdiction, and ordered Plaintiffs to respond accordingly. The Court did so because: (1) the pleadings of pro se litigants, such as Messrs. Bolukbasi, Ozkan, and Metin, must be construed liberally; (2) this concern for pro se litigants is, if anything, magnified when the pro se litigants are foreign nationals who may not be familiar with the American legal system; and (3) when contested, it is Plaintiffs' affirmative burden to establish personal jurisdiction. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 192 (2d Cir. 2008) (pro se litigants pleadings must be construed liberally); Metro. Life Ins. Co., 84 F.3d at 566 (plaintiffs bear burden of establishing personal jurisdiction).

In response to Messrs. Bolukbasi's, Ozkan's, and Metin's motions, Plaintiffs submitted a detailed memorandum of law and numerous exhibits evidencing these Defendants' role in the alleged scheme. According to this evidence: (1) Mr. Bolukbasi wrote Mr. Salzman and, in connection with Mr.

Salzman's "undertaking to me dated March 27, 2008," asked Mr. Salzman to wire $800,000 to his bank account, and another $800,000 to a bank account owned by Mr. Ozkan, after Mr. Salzman received the "original documentations" (Docket No. 130, Ex. G); (2) Mr. Salzman subsequently did so, using Plaintiffs' escrowed money to complete the transaction (Docket No. 130, Exs. H and I); (3) Mr. Bolukbasi subsequently wired more than $250,000 of this money to Mr. Metin (Docket No. 130, Exs. J); (4) these "original documentations" were forged bank records used to induce Plaintiffs' investment in the scheme, and were received by Mr. Salzman from an e-mail address associated with someone named "Hakan"; and (5) in a pending Turkish criminal proceeding, co-defendant Huseyn Coban testified that Messrs. Bolukbasi and Metin conspired to forge bank guarantees, and then deliver these forgeries to Mr. Salzman in order to induce Plaintiffs' to invest in the scheme (Docket 130, Ex. M). Mr. Coban further testified that Mr. Ozkan "helped organize those documents," and added his "English language skills," but that, when the fraudulent nature of the guarantees was revealed, he contacted Mr. Salzman and returned his portion of the proceeds. (Docket 130, Ex. M). Based on this evidence, Plaintiffs argue that they have established personal jurisdiction under the "effects doctrine" found in N.Y. C.P.L.R. § 302(a). In particular, Plaintiffs invoke N.Y. C.P.L.R. § 302(a)(3)(ii), which provides

for personal jurisdiction over persons who "commit[] a tortious act without the state causing injury to person or property within the state," if "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

The Court finds that Plaintiffs' evidence, taken collectively, clearly suffices to establish personal jurisdiction against Messrs. Bolukbasi and Metin, under New York's long arm statute. Specifically, Mr. Coban's testimony sufficiently establishes, for personal jurisdiction purposes, that Messrs. Bolukbasi and Metin conspired to commit, and did commit, wire fraud and conversion. Moreover, Mr. Coban's testimony sufficiently establishes that Messrs. Bolukbasi and Metin should have reasonably anticipated their acts to have effects in New York state, because they transmitted the fraudulent documents through the wires to a New York-based attorney, Mr. Salzman, with the expectation that Mr. Salzman "would sent the [fraudulent] guarantee to BAUMGARTNER and send the money to the bank account indicated by [co-defendant Martin Brian Tobias-Gibbons]." (Docket 130, Ex. M). In so doing, Mr. Coban's testimony sufficiently shows that Messrs. Bolukbasi and Metin subjected themselves to personal jurisdiction in New York. See generally Herbstein v. Bruetman, 768 F. Supp. 79, 82 (S.D.N.Y. 1991) ("fraudulent mail and wire communications"

directed at New York established personal jurisdiction). And the Court further finds that exercising personal jurisdiction over Messrs. Bolukbasi and Metin comports with federal due process requirements.

Mr. Ozkan's motion is a much tougher call. Mr. Coban's testimony, in the translation that Plaintiffs have provided, is subject to two equally plausible interpretations concerning Mr. Ozkan's role in the scheme. In the translation the Court has, Mr. Coban testified that Mr. Bolukbasi and Metin, but not Mr. Ozkan, formed the initial conspiracy to "compile a counterfeit letter of guarantee of a German bank." (Docket No. 130, Ex. M). Mr. Coban then testified that Mr. Bolukbasi "explains the event to Murat Ozkan and claims help owing to his English language skills," and that Mr. Ozkan then helped to "organize those documents in Turkey." (Docket No. 130, Ex. M). But it is totally ambiguous what Mr. Coban meant by "explains the event." It is not at all clear, for instance, that Mr. Bolukbasi communicated that he wanted Mr. Ozkan's help in forging documents, as opposed to his help translating and organizing legitimate documents. Similarly, according to Mr. Coban, "Later on, events are revealed when the fact is emerged that the guarantees of Baumgarter are counterfeit," and "Murat being aware of those developments sent back those moneys to Attorney Stanley." (Docket No. 130, Ex. M). This testimony

(or, at least, the translation provided) is also subject to dueling interpretations. It is possible to understand Mr. Coban as communicating that Mr. Ozkan always knew about the fraud, and only returned the money when the fraud became public, in an attempt to evade or diminish his liability. But it is also possible to understand Mr. Coban as reporting that Mr. Ozkan did not learn about the fraud until after it became public and, upon learning of it, promptly returned his ill-gotten gains.

Under the interpretation that is more favorable to Mr. Ozkan, he did not commit wire fraud or conspire to commit wire fraud, because he lacked any fraudulent intent. And, because he returned the money upon discovering the fraud, the favorable interpretation would likely foreclose finding that Mr. Ozkan converted Plaintiffs' funds or was unjustly enriched. So, under the favorable interpretation, Plaintiffs have not established that Mr. Ozkan "commit[ted] a tortuous act" that caused injury within New York. N.Y. C.P.L.R. § 302(a)(3). Nor, under the favorable interpretation, have Plaintiffs cited any authority to suggest that Mr. Ozkan's receipt of a single wire transfer from a New York bank account, which he apparently returned, would subject him to personal jurisdiction based on "transact[ing] any business within the state." N.Y. C.P.L.R. § 302(a)(1). And the authority the Court has found appears to suggest otherwise. See Landau v. New Horizon Partners, Inc., 02-CV-6802, 2003 WL

22097989, at *5-6 (S.D.N.Y. 2003) (there is no § 302(a)(1) jurisdiction even though "the funds ultimately deposited in the Spar2000 accounts were drawn from the plaintiff's New York bank account").

That being said, the Court is mindful that, at the motion to dismiss stage, the Court must "resolv[e] all doubts" and "draw all reasonable inferences" in Plaintiffs' favor. Porina, 521 F.3d at 126; Garg, 525 F. Supp. 2d at 318. Resolving such doubts and drawing such inferences, the Court must – at this stage - interpret Mr. Coban's ambiguously translated testimony as incriminating Mr. Ozkan. So, while the evidence Plaintiff has submitted to date might not suffice to justify the continued exercise of personal jurisdiction over Mr. Ozkan later on, such as at summary judgment, it does satisfy Plaintiff's current burden to make a "prima facie showing" of personal jurisdiction, under both New York's long arm statute and federal due process concerns. See Penguin Group (USA) Inc., 609 F.3d at 34-35.

It follows then that, like Messrs. Bolukbasi's and Metin's motions, Mr. Ozkan's motion to dismiss must also be DENIED.

B.  Forum Non Conveniens As To Messrs. Bolukbasi, Ozkan, and Metin

Construed liberally, Messrs. Bolukbasi, Ozkan, and Metin also appear to seek dismissal on forum non conveniens grounds, citing, among other things, the pending criminal proceedings against them in Turkey.  This argument is rejected. The party seeking moving on forum non conveniens grounds bears the burden in showing the existence of an adequate alternative forum.  See USHA (India), Ltd. v. Honeywell Intern., Inc., 421 F.3d 129, 135 (2d Cir. 2005).  Here, Messrs. Bolukbasi, Ozkan, and Metin provide nothing to support a finding that Plaintiffs can obtain adequate relief in Turkey, much less in the pending Turkish criminal proceeding.  So their forum non conveniens argument cannot stand.

## CONCLUSION

The motions to dismiss filed by Messrs. Bolukbasi, Ozkan, and Metin (Docket Nos. 103, 104, 110) are DENIED. Plaintiffs are ORDERED to serve a copy of this Order upon Messrs. Bolukbasi, Ozkan, and Metin.

SO ORDERED

/s/ JOANNA SEBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          September  17 , 2010