UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHANNES BAUMGARTNER
WIRTSCHAFTS-UND
VERMÖGENSBERATUNG GMBH, and
HOLGER KNUT THEILER,

                      Plaintiffs,

       - against -

STANLEY P. SALZMAN, ESQ., STANLEY
P. SALZMAN, P.C., FRIESNER & SALZMAN,
LLP., MARILYN J. SALZMAN, POSTBANK
FINANZBERATUNG AG, BHW BAUSPARKASSE
AG, a/k/a/ DEUTSCHE POSTBANK AG.,
MICHAEL KAUBISCH, STEFAN KRÖNER,
PETER SCHMIDT, AMBIENTE GMBH,
BLACKSTONE CAPITAL TRADE AG, HARI
RANA, MORITZ JOHANNES WAGNER d/b/a/
C.B.O.D. SERVICEBURO GERMANY, CARTER,
BAILEY,OPPENHEIM & DRYFUS, INC., J.
GREENBAUM, JOHN RALSTON, KAREN
SLACUM a/k/a KAREN SLOCUMB, AGENTS
FOR DELAWARE CORPORATIONS. INC.,
FERNANDO FARIA SAMPAIO, SINO-IBERIAN
HOLDINGS LIMITED, IT'S INVESTMENT
TREUHAND & SERVICE GMBH, NORBERT
SCHRAMM, MEHMED KOCABAS, ALI KARLI,
LIDER INTERNATIONAL IMPORT &
EXPORT GMBH, MESUT CETIN, HUSEYIN
COBAN, AYKUT HASAN BÖLUKBASI, MURAT
ÖZKAN, FIFO TRUST LIMITED, FIFO TRUSTEES
LIMITED, MEYTEC CAPITAL HOLDINGS
LIMITED, MARTIN BRIAN TOBIAS-GIBBINS, A.
RASHID, JOHN M. PRESTON LIMITED, KAZAN
INVESTMENTS LIMITED, UNIVERSAL METAL
TRADING LIMITED, METIN HAKAN, SERKET
SAHN, HILMI URKMEZ, MUHSIN KARAKURT
a/k/a/ VELI, PHILIP SINCLAIR, LES HARRISON,

**REPORT AND RECOMMENDATION**

CV 08-2582 (JS) (AKT)

MARTIN HALLEY, RENFREW SECURITY BANK
& TRUST (OFFSHORE) LTD., LONDON
FINANCIAL INVESTMENT GROUP LTD.,
and DEFENDANT DOES 1-50,

          Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I. P**RELIMINARY **S**TATEMENT

 Presently before the Court are Plaintiffs Johannes Baumgartner Wirtschafts-und Vermögensberatung GmbH ("JBWV") and Holger knut Theiler's ("Theiler") motions for partial default judgment against Defendants Hüseyin Coban ("Coban"), Ali Karli ("Karli"), and Moritz Johannes Wagner d/b/a/ C.B.O.D. Serviceburo Germany ("Wagner").[1]

 Since being served with the Second Amended Complaint, Defendants Coban, Karli and Wagner have neither responded to nor sought additional time to respond to the pleading. Accordingly, Plaintiffs sought the Clerk's entry of default against these Defendants pursuant to Rule 55(a). *See* DE 148, 167, 179. After the Clerk of the Court noted the default of these Defendants (*see* DE 153, 169, 180), Plaintiffs filed motions under Rule 55(b) seeking entry of default judgment against them. *See* DE 157, 173, 184. Judge Seybert has referred these motions to me for a Report and Recommendation to advise whether the pending motions should be granted and to determine the appropriate amount of damages, costs, and fees, if any, to be awarded. *See* DE 177, 187, 194.

---

[1] These motions are for partial default judgment because Plaintiffs moved only with respect to their state law claims of fraud, conspiracy and gross negligence.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2008, Plaintiffs commenced this action against multiple Defendants,[2] alleging, *inter alia*, RICO violations, violations of federal securities laws, and various state law claims including breach of contract, breach of fiduciary duty, negligence, fraud, fraudulent conveyance, civil conspiracy and fraudulent concealment, constructive trust, conversion, and unjust enrichment.  DE 1.

Plaintiffs initially moved to amend the Complaint seeking to include, among other things, additional defendants.  DE 31.  However, before a ruling was made on that motion, Plaintiffs moved to file a Second Amended Complaint to correct clerical errors in the captioning of their proposed amended complaint.  DE 62.  Plaintiffs' motion to file a Second Amended Complaint was granted (DE 63), and the new pleading set forth additional Defendants.[3]

---

[2] The original Defendants were: (1) Stanley P. Salzman, Esq.; (2) Stanley P. Saltzman, P.C.; (3) Postbank Finanzberatung AG ("Postbank"); (4) BHW Bausparkasse AG ("BHW"); (5) Peter Schmidt; (6) Ambiente GMBH; (7) Blackstone Capital Trade AG ("Blackstone"); (8) Carter Bailey Oppenheim & Dryfus, Inc. ("CBOD"); (9) J. Greenbaum; (10) John Ralston; (11) Fernando Faria Sampaio; (12) Sino-Iberian Holdings Limited ("Sino"); (13) It's Investment Treuhand & Service GMBH; (14) Norbert Schramm; (15) Ali Karli; (16) Lider International Import & Export GMBH; (17) Mesut Cetin; and (18) Huseyin Coban.  *See* DE 1.

[3] These Defendants are:  (1) Friesner & Salzman, P.C.; (2) Marilyn J. Salzman; (3) Michael Kaubisch; (4) Stefan Kroner; (5) Hari Rana; (6) Moritz Johannes Wagner d/b/a/ C.B.O.D. Serviceburo Germany ("Wagner"); (7) Karen Slacum a/k/a Karen Slocumb ("Slacum"); (8) Agents for Delaware Corporations, Inc. ("ADCI"); (9) Mehmed Kocabas; (10) Aykut Hasan Bolukbasi; (11) Murat Özkan; (12) FiFo Trust Limited; (13) FiFo Trustees Limited; (14) Meytec Capital Holdings Limited ("Meytec") ; (15) Martin Brian Tobias-Gibbins ("Gibbons") ; (16) A. Rashid; (17) John M. Preston Limited ("Preston"); (18) Kazan Investments Limited ("Kazan"); (19) Universal Metal Trading Limited ("Universal"); (20) Metin Hakan; (21) Serket Sahin; (22) Hilmi Urkmez; (23) Muhsin Veli a/k/a Veli; (24) Philip Sinclair; (25) Les Harrison; (26) Martin Halley; (27) Renfrew Security Bank & Trust (Offshore) Ltd.; and (28) London Financial Investment Group Ltd.

Subsequent to the filing of the Second Amended Complaint, Defendants Marilyn Salzman, Friesner & Salzman LLP, and Universal were voluntarily dismissed by the Plaintiffs. DE 86, 128, 171.  In addition, Defendants Gibbons and Meytec consented to have a judgment entered against them in an amount just over $7.5 million.  DE 234.

A. **Responding Defendants.**

Defendants Stanley P. Salzman, Esq. and Salzman P.C. ("Salzman Defendants") were the only Defendants to respond to the original Complaint by filing an Answer denying the allegations and asserting a counterclaim against Plaintiffs for indemnification.  *See* DE 7.  However, on March 16, 2010, the Salzman Defendants were dismissed from this action, without prejudice. DE 128.

On February 18, 2010, Defendants Bolukbasi and Özkan wrote to the Court claiming that the lawsuit was not acceptable against them in terms of "procedure and principle" and requested its dismissal.  DE 103-104.  A similar letter was filed by Defendant Metin on February 26, 2010. DE 110.  Judge Seybert construed these letters as motions to dismiss and subsequently denied them on September 17, 2010.  DE 237.  In addition, on March 11, 2010, Defendants Postbank, Kaubisch and Kroner formally moved to dismiss the Second Amended Complaint for lack of personal jurisdiction, subject matter jurisdiction, and for failure to state a claim.  DE 114. Likewise, on July 23, 2010, Defendants FiFo Trust Limited and FiFo Trustees Limited moved to dismiss for lack of personal jurisdiction.  DE 192.  Before these motions were decided, Plaintiffs voluntarily dismissed Postbank, Kaubisch and Kroner, without prejudice, and FiFo Trust Limited and FiFo Trustees Limited, with prejudice.  DE 235, 253.  Therefore, the only Defendants remaining in this action are those that have defaulted.

### B. Defaulting Defendants

Plaintiffs first moved for partial default judgment against Defendants Carter Bailey Oppenheim & Dryfus, Inc. ("CBOD"), Greenbaum, and Ralston since these defendants never responded to the original Complaint. DE 14. On September 10, 2009, Judge Seybert adopted this Court's Report & Recommendation (*see* DE 57) granting default judgment but deferring the calculation of damages until the remaining claims against the non-defaulting Defendants were resolved. DE 60.

Further, Plaintiffs moved for partial default judgment against Defendants Slacum and ADCI who failed to answer or otherwise move with respect to the Second Amended Complaint. DE 77. Consistent with the previous Report & Recommendation addressing other defaulting defendants, this Court recommended to Judge Seybert that Plaintiffs' default judgment be granted but that a calculation of damages be deferred. DE 217. However, after considering an objection filed by Plaintiffs regarding exigent circumstances of which this Court was unaware (*see* DE 220), Judge Seybert adopted in part and overruled in part the Report and Recommendation and entered a partial default judgment awarding liquidated damages and statutory interest. DE 240.

## II. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations

in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R.. Civ. P. 55(a); *see also FashionTV.com GMBH v. Hew*, No. 06-CV-3200, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiffs have done here. *See Kieit Constructors, Inc. v. Franbuilt, Inc.,* No. 07-CV-121A, 2007 WL 4405029 at *2 (W.D.N.Y. Dec. 14, 2007); *FashionTV.com*, 2007 WL 2363694, at *2. The Clerk of the Court noted the default of Defendants Ambiente, Schmidt, Veli and Kocabas but judgment has not been entered for Plaintiffs. *See* DE 138-39, 141, 143. Rule 55(b) provides that, except in cases in which "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" (*see* Rule 55(b)(1)), "the party must apply to the court for a default judgment." *See* Fed. R. Civ. P. 55(b)(2). The determination of a motion for default judgment is left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

In determining whether to grant a default judgment, the court may consider "numerous factors, including 'whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt.'" *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see also Basile v. Wiggs*, No. 08-CV-7549, 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for court's consideration including defaulting party's bad faith, "possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect") (second alteration in the original) (quoting *Feely v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999)).

### III. DISCUSSION

As to the first factor, the failure of Defendants to respond to the Complaint sufficiently demonstrates willfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). Plaintiffs have submitted certificates of

7

service demonstrating that Defendant Coban was personally served on January 19, 2010 by Process Forwarding International, agents for the U.S. Central Authority under the Hague Service Convention. *See* DE 147; *see also* Cert. of Ivo George Caytas and Mem. of Law in Supp. of Mot. for Partial Default Judgment Against Def. Coban ("Caytas Cert. I") ¶ 8. Plaintiffs also submitted certificates of service demonstrating that Defendants Karli and Wagner were served in the same manner on April 9, 2010. *See* DE 156, 178; *see also* Cert. of Ivo George Caytas and Mem. of Law in Supp. of Mot. for Partial Default Judgment Against Def. Karli ("Caytas Cert. II") ¶ 8; Cert. Of Ivo George Caytas and Mem. of Law in Supp. of Mot. for Partial Default Judgment Against Def. Wagner ("Caytas Cert. III") ¶ 5. Defendants neither answered nor responded in any way to the Second Amended Complaint, nor did they request an extension of time to respond. Additionally, Plaintiffs have submitted affidavits of service demonstrating that the Defendants were served with Plaintiffs' motion for partial default judgment as well as with copies of the Clerk's Certificates noting the defaults of each of these Defendants.[4] *See* DE 158, 174, 185. Therefore, the court file removes any doubt and clearly establishes that Defendants have failed to respond to the Second Amended Complaint despite being properly served.

Next, the Court must consider whether Defendants have a meritorious defense. The Court is unable to make such a determination because these Defendants have presented no such defense to the Court. Hence, where no defense has been presented and, "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.,* 30

---

[4] Indeed, the Clerk of the E.D.N.Y. also sent copies of the Clerk's Certificates noting the defaults of the Defendants to all parties. *See* DE 153, 169, 180.

F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed.1998)). For purposes of these motions, Plaintiffs seek a partial default judgment as to the state law claims of fraud, conspiracy and gross negligence. *See* Caytas Cert. I ¶ 60; Caytas Cert. II ¶ 60; Caytas Cert. III ¶ 64. In the Second Amended Complaint, Plaintiffs recount the complex multiple jurisdiction, multi-million-dollar scheme of Defendants, which involved numerous parties, including those with ties to Turkish organized crime . *See* Sec. Am. Compl. ¶¶ 64-135. Reduced to its essence, the scheme followed a pattern commonly known as "Advance Fee Fraud." This is where

> members of the alleged conspiracy would court investors with attractive representations, proposals and offerings regarding a private placement program that would enable these investors to participate in a secretive, unusually lucrative high yield investment program ("HYIP") supposedly conducted by licensed bank traders acting for major financial institutions under licenses granted by the U.S. Federal Reserve. The HYIP was supposed to generate returns far above market averages because licensed bank traders were selling fixed-income securities issued by major international money center banks at a substantial discount into the secondary bond market, all under the strict supervision and control by the U.S. Federal Reserve.

Sec. Am. Compl. ¶¶ 72-73 (internal quotations omitted). The scheme involved various bank employees (with access to bank documents) as well as Defendant Saltzman, a New York attorney acting as escrow agent, who, with other Defendants, gave the scheme the appearance of legitimacy and credibility. *See id.* ¶¶ 66, 68, 71.

Specifically regarding Defendant Coban, the Complaint alleges that he was one of the Turkish organized crime figures involved in the scheme who "acted in concert to gain access to bank employees and bank documents originating from at least two large European banking groups." *Id.* ¶ 71; *see also id.* ¶ 110 (alleging that Coban is "a major figure in Turkish organized

crime [and] acted as co-conspirator" in the scheme). Plaintiffs actually claim that Coban

> was one of the masterminds, if not *the* mastermind, of the 'back office' of the Unlawful Enterprise. Along with others, he organized, instructed, directed and supervised a network of forgers, introducers and facilitators of access to bankers, bank facilities, bank stationary, and sham corporations used for the purposes of the alleged frauds. This network consisted primarily of expatriate individuals of Turkish extraction resident throughout Europe and in Turkey."

Caytas Cert. I ¶ 32; Plaintiffs further state that Coban "maintained close contact and co-operation with the Unlawful Enterprise's other alleged masterminds" and "served as their chief contact to the 'forgery and document production' department of the Unlawful Enterprise." *Id.* ¶ 3. This contention is highlighted in the Complaint where Plaintiffs detail the Advance Fee Fraud scheme and Coban's part in the same. *See* Sec. Am. Compl. ¶¶ 202-205. In fact, Plaintiffs argue that even after this action was brought, Coban proposed to one of the Plaintiffs a similar fraudulent HYIP transaction which was consistent with the conspiracy at issue here. *See id.* ¶¶ 207-208. As such, Plaintiffs maintain that Coban was a member of and co-conspirator in the alleged illicit enterprise that defrauded Plaintiffs and was aware of the misrepresentations being made to them regarding the HYIP. *Id.* ¶¶ 79, 131, 133.

Likewise, Plaintiffs allege that Defendant Wagner was also one of the "masterminds" of the scheme as his involvement included "organizing, coordinating and supporting a network of international unlicensed investment brokers, Turkish forgers, fraudsters and support personnel used by the non-Turkish defendants to defraud Plaintiffs." Caytas Cert. III ¶ 17; *see also* Sec. Am. Compl. ¶¶ 82, 110.[5] Plaintiffs additionally allege that Defendant Wagner and his

---

[5] It appears in the Second Amended Complaint the Plaintiffs use the acronym "CBOD" interchangeably to not only reference Defendant Carter Bailey Oppenheim & Dryfus but also Defendant Wagner who was doing business as Carter Bailey Oppenheim & Dryfus.

companies, Kazan and Preston, received substantial wire transfers from Defendant Saltzman. *Id.* ¶¶ 34-35; *see also* Sec. Am. Compl. ¶¶ 71, 178-181, 186-188, 208.

Plaintiffs also proffer similar allegations against Defendant Karli, whom they allege to be "one of the principals of the 'back office' of the Unlawful Enterprise in Germany." Caytas Cert. II ¶ 32. Plaintiffs maintain that Defendant Karli was "directed or instructed directly or indirectly" by Defendant Coban. *Id.* Plaintiffs argue that Karli "played a major role in organizing and coordinating, directly as well as indirectly, the verification . . . of certain documents purportedly issued by [defendant banks] in this and other identical frauds perpetrated by the same alleged Unlawful Enterprise." *Id.* ¶ 18; *see also id.* ¶¶ 33-34 (claiming that Karli served the conspiracy in the "forgery and document production" department and had detailed knowledge of the specific fraud against the Plaintiffs). The Complaint alleges that Karli, a Turkish organized crime figure, assisted in the overall illicit enterprise by accessing bank employees and documents and providing such documents to other Defendants which in turn were used to defraud the Plaintiffs. Sec. Am. Compl. ¶¶ 71, 81-82, 192, 201-202. Plaintiffs maintain that through this network of forgers, which supported the overall conspiracy, Plaintiffs' escrowed funds were disbursed improperly. *Id.* ¶ 17. These allegations, which are deemed admitted by Defendants in light of their default, describe in detail the factual allegations that underlie Plaintiffs' claims for partial default, which this Court finds to be adequately pled. *See Indymac Bank*, 2007 WL 4468652, at *1.

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying these motions would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court."

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at *3). Since all three factors have been met and the partial default judgment sought by Plaintiffs is warranted, I respectfully recommend to Judge Seybert that a partial default judgment be entered against Defendants Coban, Karli and Wagner.

## IV. DAMAGES CALCULATION

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir. 1995)). Plaintiff, however, must still prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Therefore, the only question remaining is whether Plaintiff has provided adequate support for the relief he seeks. *Greyhound Exhibitgroup, Inc*., 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-

3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). The Plaintiffs submitted their memoranda of law in support of their request for partial default judgment with numerous exhibits annexed, including the escrow deposits of the Plaintiffs and confirmation of the same from Defendants. *See* DE 157, 173, 184. The Court finds that Plaintiffs' submissions provide sufficient evidence to form the basis for an award of damages without a further hearing.

Pursuant to the state law claims, Plaintiff JBWV seeks "liquidated damages" of $3.6 million, which constitutes the amount of its wire transfer to Salzman's escrow account as well as interest at the statutory rate of 9% annually, or $887.67 per diem, from March 19, 2008 until the date of the judgment. *See* Caytas Cert. I ¶ 58.[6] As for Plaintiff Theiler, he seeks "liquidated damages" of $200,000 which constitutes his $1.2 million wire transfer minus the $1 million received back from Defendant Salzman plus interest at the annual statutory rate of 9%. *Id.* ¶ 59. Although Theiler was reimbursed $1 million on June 20, 2008, he now seeks interest at the statutory rate of 9% annually, or $295.89 per diem, on that $1 million from March 20, 2008 until June 20, 2008 (92 days), plus 9% annual interest, or $49.32 per diem, on the remaining $200,000 from March 20, 2008 until judgment is entered. *Id.*

Plaintiffs have provided the Court with documents acknowledging JBWV's payment of $3.6 million on March 19, 2008 and Theiler's payment of $1.2 million on March 20, 2008. *See* Caytas Cert. I, Exs. N, O. Moreover, letters from Salzman confirming receipt of these funds were also provided to the Court. *See* Caytas Cert. I, Exs. P, Q. Although the documents

---

[6] Since the memoranda submitted by Plaintiffs in support of their pending motions use identical language and exhibits to corroborate the damages alleged, the Court will only reference to "Caytas Cert. I."

13

acknowledging payment are not in English (*see* Caytas Cert. I, Exs. N and O), the Court can nevertheless confirm, through the dates, names and dollar amounts, that on March 19, 2008, JBWV wired $3.6 million, on March 20, 2008, Theiler wired $1.2 million, and by March 21, 2008,[7] Salzman had received the funds. Further, Plaintiff Theiler has acknowledged the fact that $1 million was reimbursed to him on June 20, 2008. *See* Caytas Cert. I, Ex. R. Therefore, I respectfully recommend to Judge Seybert that JBWV be awarded $3.6 million while Theiler be awarded $200,000 based on their actual payments.

Plaintiff JBWV seeks interest on its $3.6 million at the statutory rate of 9% annually or $887.67 per diem starting from March 19, 2008 until judgment is entered. Although Plaintiffs move for partial default judgment as to their State Claims, this Court nevertheless has subject matter jurisdiction over the action under 28 U.S.C. § 1331 pursuant to the alleged violations of Defendants under RICO and other federal securities laws. *See* Sec. Am. Compl. ¶¶ 243-296. Therefore, in such circumstances, "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2d Cir. 1995) (internal quotations omitted). As Judge Seybert has previously elected to adopt the New York method of calculating interest in this action (*see* DE 240), this Court will follow suit. Under New York law, "[i]nterest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or employment of,

---

[7] The letter from Defendant Salzman appears to have been incorrectly dated March 21, 2007 instead of March 21, 2008. *See* Caytas Cert. I Ex. P. The Court believes this to be the case, as the amount referenced in the letter is nearly identical to $3.6 million (difference of $205.35) and the letter is written to JBWV regarding the "Arrangement Fees." *Id.*

property." CPLR § 5001(a). Further, the interest "shall be computed from the earliest ascertainable date the cause of action existed." CPLR § 5001(b). Because Plaintiff JBWV made his investment on March 19, 2008, that date is the appropriate date to begin the calculation. New York has set the annual rate of interest at 9%. CPLR § 5004. Therefore, I respectfully recommend to Judge Seybert that interest be awarded to Plaintiff JBWV from March 19, 2008 until February 24, 2011 (1,072 days) at the per diem rate of $887.67, resulting in total prejudgment interest in the amount of $951,582.24, plus additional per diem interest of $887.67 for every day after February 24, 2011, until judgment is entered.

Likewise, I respectfully recommend to Judge Seybert that interest be awarded to Theiler on the $1 million from March 20, 2008 until the $1 million was reimbursed on June 20, 2008 (92 days) at the per diem rate of $295.89, resulting in $27,221.88. I also recommend that interest be awarded on the remaining $200,000 paid by Theiler and not reimbursed from March 20, 2008 until February 24, 2011 (1,071 days) at the per diem rate of $49.32, resulting in $52,821.72, plus additional per diem interest of $49.32 for every day after February 24, 2011, until judgment is entered.

## V.  CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Seybert that (1) partial default judgment is warranted and should be entered jointly and severally against Defendants Coban, Karli, and Wagner; and (2) damages be awarded to Plaintiffs as follows:

- For Plaintiff JBWV, (a) $3.6 million for liquidated damages; plus (b) $951,582.24 in interest up through February 24, 2011, and $887.67 for every day after February 24, 2011, until judgment is entered.

- For Plaintiff Theiler, (a) $200,000 for liquidated damages; plus (b) $80,043.60 in interest up through February 24, 2011 and $49.32 for every day after February 24, 2011, until judgment is entered.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Plaintiffs' counsel is directed to serve a copy of this Order upon Defendants forthwith by the most expeditious means of foreign service and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
February 24, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge