UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JOHANNES BAUMGARTNER WIRTSCHAFTS-
UND VERMÖGENSBERATUNG GMBH and
HOLGER KNUT THEILER,

                    Plaintiffs,

          -against-

STANLEY P. SALZMAN, ESQ.; STANLEY P.
SALZMAN, P.C.; FRIESNER & SALZMAN P.C.;
MARILYN J. SALZMAN; POSTBANK
FINANZBERATUNG AG; BHW BAUSPARKASSE AG
a/k/a DEUTSCHE POSTBANK AG; MICHAEL
KAUBISCH; STEFAN KRÖNER; PETER SCHMIDT;
AMBIENTE GMBH; BLACKSTONE CAPITAL TRADE
AG; HARI RANA; MORITZ JOHANNES WAGNER          MEMORANDUM & ORDER
d/b/a C.B.O.D. SERVICEBÜRO GERMANY;            08-CV-2582(JS)(AKT)
CARTER, BAILEY, OPPENHEIM & DRYFUS,
INC.; J. GREENBAUM; JOHN RALSTON; KAREN
SLACUM a/k/a KAREN SLOCUMB; AGENTS FOR
DELAWARE CORPORATIONS; FERNANDO
FARIA SAMPAIO; SINO-IBERIAN HOLDINGS
LIMITED; IT'S INVESTMENT TREUHAND &
SERVICE GMBH; NORBERT SCHRAMM; MEHMED
KOCABAS; ALI KARLI; LIDER INTERNATIONAL
IMPORT & EXPERT GMBH; MESUT CETIN;
HÜSEYIN COBAN; AYKUT HASAN BÖLÜKBASI;
MURAT ÖZKAN; FIFO TRUST LIMITED; FIFO
TRUSTEES LIMITED; MEYTEC CAPITAL
HOLDINGS LTD; MARTIN BRIAN TOBIAS-
GIBBINS; A. RASHID; JOHN M. PRESTON
LIMITED; KAZAN INVESTMENTS LIMITED;
UNIVERSAL METAL TRADING LTD.; HAKAN
METIN; SERKET SAHIN; HILMI ÜRKMEZ;
MUHSIN KARAKURT a/k/a VELI; PHILIP
SINCLAIR; LES HARRISON; MARTIN HALLEY,
RENFREW SECURITY BANK & TRUST (OFFSHORE)
LTD.; LONDON FINANCIAL INVESTMENT GROUP
LTD.; and DEFENDANT DOES 1-50;

                    Defendants.
--------------------------------------X

APPEARANCES
For Plaintiffs:                Ivo G. Caytas, Esq.
                               Caytas & Associates
                               146 West 57th Street, Suite 57d
                               New York, NY 10019

For Defendants:
Postbank                       Howard Zelbo, Esq.
Finanzberatung,                Cleary Gottlieb Steen & Hamilton
BHW Bausparkasse,              One Liberty Plaza
Kaubisch, and Kroner           New York, NY 10006

FIFO Trust Limited,            Charles Hyman, Esq.
FIFO Trustees Limited,         Kissel Hirsch & Wilmer LLP
Tobias-Gibbins, and            580 White Plains Road, 5th Floor
Meytec Capital Holdings        Tarrytown, NY 10591

Salzman & Stanley P.           Peter J. Biging, Esq.
Salzman, P.C.                  Lewis, Brisbois, Bisgaard & Smith, LLP
                               77 Water Street, Suite 2100
                               New York, NY 10005

Remaining Defendants           No appearances.

SEYBERT, District Judge:

Pending before the Court are the following: (1) Magistrate Judge A. Kathleen Tomlinson's Report and Recommendation ("R&R") that the motion for partial default judgment filed by Plaintiffs Johannes Baumgartner Wirtschafts-Und Vermögensberatung GmbH ("JBWV") and Holger Knut Theiler ("Theiler," and together with JBWV, "Plaintiffs") on their claims for fraud, conversion, unjust enrichment, conspiracy, and gross negligence against Defendants Aykut Hasan Bölükbasi ("Bölükbasi"), Murat Özkan ("Özkan"), and Hakan Metin ("Metin") be granted in part and denied in part (Docket Entries 247, 329) and Bölükbasi, Özkan, and Metin's objections thereto (Docket Entry 347); (2) Judge Tomlinson's R&R

that Plaintiffs' motion for final partial default judgment on their claims for breach of contract, securities fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants Peter Schmidt ("Schmidt"), Ambiente GmbH ("Ambiente"), Moritz Johannes Wagner ("Wagner"), Carter Bailey Oppenheim & Dryfus Inc. ("CBOD"), J. Greenbaum ("Greenbaum"), John Ralston ("Ralston"), Karen Slacum a/k/a Karen Slocumb ("Slacum"), Agents for Delaware Corporations ("ADC"), Hüseyin Coban ("Coban"), Bölükbasi, Özkan, and Metin be granted in part and denied in part (Docket Entries 306, 333) and Plaintiffs' and Bölükbasi, Özkan, and Metin's objections thereto (Docket Entries 343, 347); (3) Plaintiffs' unopposed motion to reinstate their claims against Defendants Stanley P. Salzman ("Salzman"), Stanley P. Salzman P.C. ("Salzman P.C."), and Friesner & Salzman P.C. (together, the "Salzman Defendants") (Docket Entry 315); (4) Plaintiffs' motion to reinstate their claims against Defendants Martin Brian Tobias-Gibbins ("Gibbins") and Meytec Capital Holdings Limited ("Meytec") (Docket Entry 311); and (5) Gibbins and Meytec's cross-motion to declare the settlement agreement between Plaintiffs and Gibbins and Meytec breached (Docket Entry 319).

For the following reasons, the Court SUSTAINS Bölükbasi, Özkan, and Metin's objections to Judge Tomlinson's R&Rs and OVERRULES Plaintiffs' objections; ADOPTS IN PART Judge Tomlinson's R&Rs; DENIES Plaintiffs' motions for default judgment; DENIES

Plaintiffs' motions to reinstate their claims against the Salzman Defendants and Defendants Gibbins and Meytec; and DENIES Defendants Gibbins and Meytec's motion to enforce the settlement agreement.

<u>BACKGROUND</u>

The Court assumes familiarity with the underlying facts of this case, which are detailed in both of Judge Tomlinson's R&Rs. Thus, this section will be limited to this case's lengthy procedural history.

Plaintiffs commenced this action on June 27, 2008, asserting violations of RICO, federal securities laws, and New York state common law arising out of a purported advanced fee fraud.[1] On September 10, 2008, the Clerk of the Court noted the default of Defendants CBOD, Greenbaum, and Ralston (Docket Entries 11-13), and, on September 11, 2008, Plaintiffs filed a motion for a partial default judgment against those defendants on their state law fraud, conversion, unjust enrichment, conspiracy, and gross negligence claims (Docket Entry 14), which the undersigned

---

[1] The defendants named in the original Complaint were Salzman, Salzman P.C., Postbank Finanzberatung AG ("Postbank"), BHW Bausparkasse AG ("BHW"), Schmidt, Ambiente, Blackstone Capital Trade AG ("Blackstone"), CBOD, Greenbaum, Ralston, Fernando Faria Sampaio ("Sampaio"), Sino-Iberian Holdings Limited ("Sino"), It's Investment Treuhand & Service GmbH ("It's Investment"), Norbert Schramm ("Schramm"), Ali Karli ("Karli"), Lider International Import & Export GmbH ("Lider"), Mesut Cetin ("Cetin"), Coban, and Defendant Does 1-50.

referred to Judge Tomlinson for an R&R (Docket Entry 26).  Judge Tomlinson issued her R&R on August 14, 2009, recommending that the Court enter a partial default judgment against these defendants on those claims but defer calculating damages until resolution of the entire case.  (Docket Entry 57.)  The Court adopted this R&R in its entirety on September 10, 2009.  (Docket Entry 60.)

On September 11, 2009, Plaintiffs moved for leave to file a Second Amended Complaint[2] which set forth additional defendants.[3]  (Docket Entry 62.)  Judge Tomlinson granted that motion on September 17, 2009.  (Docket Entry 63.)  Thereafter, Plaintiffs voluntarily dismissed the claims against Marilyn Salzman with prejudice (Docket Entry 86), against the Salzman Defendants without prejudice (Docket Entry 128), against Universal

---

[2] Plaintiffs had previously moved for leave to file a First Amended Complaint (Docket Entry 31) but that motion, which was still pending on September 11, 2009, was rendered moot by Plaintiffs' filing the motion for leave to file a Second Amended Complaint.

[3] The Second Amended Complaint added the following defendants: Friesner & Salzman P.C., Marilyn Salzman, Michael Kaubisch ("Kaubisch"), Stefan Kröner ("Kröner"), Hari Rana ("Rana"), Wagner, Slacum, ADC, Mehmed Kocabas ("Kocabas"), Bölükbasi, Özkan, FiFo Trust Limited, FIFO Trustees Limited (together with "FiFo Trust Limited," the "FIFO Defendants"), Meytec, Gibbins, A. Rashid, John M. Preston Limited, Kazan Investments Limited ("Kazan"), Universal Metal Trading Limited ("Universal Metal"), Metin, Serket Sahin ("Sahin"), Hilmi Ürkmez ("Ürkmez"), Muhsin Karakurt a/k/a Veli ("Veli"), Philip Sinclair ("Sinclair"), Les Harrison ("Harrison"), Martin Halley ("Halley"), Renfrew Security Bank & Trust (Offshore) Ltd. ("Renfrew"), and London Financial Investment Group Ltd. ("London Financial").

Metal without prejudice (Docket Entry 171), against BHW, Postbank, Kaubisch, and Kröner without prejudice (Docket Entry 235), and against the FIFO Defendants with prejudice (Docket Entry 253). Plaintiffs also consented to the entry of judgment against Gibbins and Meytec in the amount of $7,536,345.00. (Docket Entry 234.)

In the interim, Plaintiffs requested that the default of Defendants Slacum and ADC be entered by the Clerk of the Court and moved for a partial default judgment against Slacum and ADC on their state law fraud, conversion, unjust enrichment, conspiracy, and gross negligence claims. (Docket Entries 73, 77.) The Clerk of the Court noted their defaults (Docket Entries 75-76), and the Court referred the motion for a partial default judgment to Judge Tomlinson for an R&R (Docket Entry 91). Judge Tomlinson issued an R&R on August 24, 2010, recommending that the Court enter a partial default judgment against these defendants on these claim but defer calculating damages until resolution of the entire case. (Docket Entry 217.) Plaintiffs filed objections to Judge Tomlinson's R&R to the extent that she recommended deferring the calcuation of damages and the entry of judgment. (Docket Entry 220.) The Court sustained Plaintiffs' objections, thus overruling the portion of Judge Tomlinson's R&R that recommended delaying an assessment of damages, and granted Plaintiffs' motion for a partial default judgment in its entirety. (Docket Entry 240.) A partial judgment was entered against Slacum and ADC jointly and severally in the

amount of $3,600,000 in liquidated damages plus $821,982.42 in statutory interest in favor of JBWV and in the amount of $200,000.00 in liquidated damages plus $68,301.33 in statutory interest in favor of Theiler. (Docket Entry 240.)

Plaintiffs filed similar motions for partial default judgment against Defendants Ambiente, Schmidt, Veli, Kocabas, Coban, Karli, and Wagner (Docket Entries 145, 149, 157, 173, 184, 189) after receiving certifications of their respective defaults from the Clerk of the Court (Docket Entries 138-39, 141, 143, 153, 169, 180). These motions were all referred to Judge Tomlinson for R&Rs. (Docket Entries 154, 177, 187, 194.) Judge Tomlinson issued three separate R&Rs addressing these motions on February 24, 2011 (Docket Entries 262-64), which the Court adopted in their entirety (Docket Entry 269). That Order concluded, in relevant part, as follows:

1. A partial default judgment is entered in Plaintiffs' favor, and against Defendants Ambiente GMBH, Peter Schmidt, Muhsin Karakurt a/k/a Muhsin Veli, Mehmed Kocabas, Hüseyin Coban, Ali Karli, Moritz Johannes Wagner d/b/a C.B.O.D. Serviceburo Germany, on the state law claims of fraud, conversion, unjust enrichment, conspiracy and gross negligence.

2. Defendants Ambiente GMBH, Peter Schmidt, Muhsin Karakurt a/k/a Muhsin Veli, Mehmed Kocabas, Hüseyin Coban, Ali Karli, Moritz Johannes Wagner d/b/a C.B.O.D. Serviceburo Germany; Carter Bailey Oppenheim & Dryfus, Inc., J. Greenbaum, and John Ralston are jointly and severally liable:

    a.    To Plaintiff Johannes Baumgartner Wirtschafts- und Vermöegensberatung [sic] GMBH for: (a) liquidated damages in the amount of $3,600,000; plus (b) prejudgment interest in the amount of $970,223.31;

    b.    To Plaintiff Holger Knut Theiler for: (a) liquidated damages in the amount of $200,000; plus (b) prejudgment interest in the amount of $81,079.32.

3. The Clerk of the Court is directed to issue a judgment in Plaintiffs' favor on those amounts, against those Defendants.

4. Additionally, the Clerk of the Court is directed to amend the judgment entered by Electronic Order on September 30, 2010 against Ms. Slacum and Agents for Delaware Corporations. The Amended Judgment should reflect that Ms. Slacum and Agents for Delaware Corporations are jointly and severally liable with Ambiente GMBH, Peter Schmidt, Muhsin Karakurt a/k/a Muhsin Veli, Mehmed Kocabas, Hüseyin Coban, Ali Karli, Moritz Johannes Wagner d/b/a C.B.O.D. Serviceburo Germany; Carter Bailey Oppenheim & Dryfus, Inc., J. Greenbaum, John Ralston, and not just each other.

. . .

8. Any assets that Plaintiffs recover from any Defendant shall be deposited in the Court's registry pending this case's resolution or further order of the Court. Plaintiffs are directed to consult with Judge Tomlinson concerning the proper procedure for depositing said assets.

9. The Court shall retain jurisdiction of this matter for all purposes.

(Docket Entry 274, at 6-7.)[4]  A partial default judgment consistent with that Order was entered, and the prior partial default judgment against CBOD, Greenbaum, and Ralston was amended to reflect that they were jointly and severally liable with all of the defaulting defendants, not just with each other.  (Docket Entry 275.)

In the interim, Plaintiffs filed another motion for a partial default judgment (Docket Entry 247) after the Clerk of the Court noted the defaults of Defendants Bölükbasi, Özkan, and Metin (Docket Entries 244-46).  This motion was referred to Judge Tomlinson for an R&R on November 29, 2010.  (Docket Entry 251.)

Before Judge Tomlinson issued an R&R on that motion, Plaintiffs filed a letter requesting, inter alia: (1) leave to move for a second partial default judgment against Defendants Ambiente, Schmidt, Veli, Kocabas, Coban, Karli, Wagner, Greenbaum, Ralston, Slacum, CBOD, and ADC on their RICO, securities fraud, and breach of contract claims and (2) an order "relieving" Plaintiffs of the condition in the existing partial default judgment that all assets recovered had to be deposited with the Court pending resolution of the entire action. (Docket Entry 294.) The Court granted Plaintiffs' request to move for partial default

_____

[4] The Court is actually citing to and quoting from an amended version of the original Order adopting Judge Tomlinson's R&Rs that was edited to correct some typographical errors.

judgment and denied Plaintiffs' request for an order amending the partial default judgment. (Docket Entry 303.)

Plaintiffs, in that letter, also asserted that they would voluntarily dismiss the remaining claims against the remaining defendants with the intention of commencing a new action in which they would: (1) add new defendants, (2) reinstate claims against defendants that were dismissed from this action without prejudice, and (3) reinstate their claims against the Salzman Defendants, Gibbins, and Meytec, who were previously dismissed pursuant to settlement agreements. (Docket Entry 294.) Although the Court was amenable to Plaintiffs discontinuing the remaining claims in this action without prejudice, the Court expressed concern regarding Plaintiffs' ability to reinstate their claims against the Salzman Defendants, Gibbins, and Meytec in a new action. (Order, Docket Entry 303, at 9-11.) Thus, the Court granted Plaintiffs' leave to move to reinstate those claims in the present action.

Thereafter, Plaintiffs moved for a partial default judgment on its RICO, securities fraud, and breach of contract claims against Defendants Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Wagner, Coban, Bölükbasi, Özkan, and Metin (Docket Entry 306)[5] and filed motions to reinstate its claims

---

[5] Plaintiffs did not move for partial default judgment against Defendants Kocabas, Karli, or Veli--three defendants whose

10

against the Salzman Defendants and Gibbins and Meytec (Docket Entries 311, 315). The Salzman Defendants did not oppose Plaintiffs' motion, but Gibbins and Meytec filed a cross-motion alleging that Plaintiffs had breached their settlement agreement (Docket Entry 319).

Judge Tomlinson issued R&Rs on the pending motions for default judgment on February 21, 2013 (the "February 21 R&R") and March 8, 2013 (the "March 8 R&R") respectively. (Docket Entries 329, 333.) The February 21 R&R recommended that the Court: (1) deny Plaintiffs' motion for partial default judgment against Defendant Özkan for unjust enrichment and conversion without prejudice and give Plaintiffs twenty-one days to provide additional information in support of such claims; (2) deny Plaintiffs' motion for partial default judgment against Bölükbasi, Özkan, and Metin on their claim for gross negligence; (3) grant Plaintiffs' motion for partial default judgment against Bölükbasi and Metin on their unjust enrichment and conversion claims and hold them jointly and severally liable on these claims with Slacum, ADC, Ambiente, Schmidt, Veli, Kocabas, Coban, Karli, Wagner, CBOD, Greenbaum, and Ralston; (4) grant Plaintiffs' motion for partial default judgment against Bölükbasi, Özkan, and Metin on their

---

default has been noted and against whom partial default judgments on some of the state law claims have been entered--for reasons unknown to the Court.

claims for fraud and conspiracy and hold them jointly and severally liable on these claims with Slacum, ADC, Ambiente, Schmidt, Veli, Kocabas, Coban, Karli, Wagner, CBOD, Greenbaum, and Ralston; and (5) award damages to JBWV in the amount of $3,600,000 plus interest and to Theiler in the amount of $200,000 plus interest. (Docket Entry 329.)

Judge Tomlinson's March 8 R&R recommended that the Court: (1) grant Plaintiffs' motion for a partial default judgment against Schmidt, Ambiente, and CBOD on the breach of contract claims; (2) grant Plaintiffs' motion for a partial default judgment against Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Wagner, Coban, Bölükbasi, Özkan, and Metin on the securities fraud claims; (3) grant Plaintiffs' motion for a partial default judgment against Wagner on the RICO claims; (4) deny Plaintiffs' motion for a partial default judgment against Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Coban, Bölükbasi, Özkan, and Metin on the RICO claims; and (5) award Plaintiff JBWV $3,600,000 plus interest on the breach of contract and securities fraud claims against Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Wagner, Coban, Bölükbasi, Özkan, and Metin jointly and severally and $10,800,000 against Wagner only on the RICO claims and award Plaintiff Theiler $200,000 plus interest on the breach of contract and securities fraud claims against Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Wagner, Coban, Bölükbasi, Özkan, and

12

Metin jointly and severally and $600,000 against Wagner only on the RICO claims. (Docket Entry 333.)

Defendants Bölükbasi, Özkan, and Metin filed objections to both R&Rs (Docket Entry 347), and Plaintiffs objected only to the March 8 R&R (Docket Entry 343). Also pending before the Court are Plaintiffs' motions to reinstate their claims against the Salzman Defendants, Gibbins, and Meytec, and Gibbins and Meytec's cross-motion to enforce their settlement agreement. (Docket Entries 311, 315, 319.)

DISCUSSION

The Court will first address the objections to Judge Tomlinson's R&Rs, followed by Plaintiffs' unopposed motion to reinstate their claims against the Salzman Defendants, and finally the cross-motions regarding the settlement agreement between Plaintiffs and Gibbins and Meytec.

I.  Objections to Judge Tomlinson's R&Rs

The Court will summarize the applicable standard of review before turning to the merits of the parties' objections.

A.  Standard of Review

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002). A party may serve and file specific, written

objections to a magistrate's report and recommendation within fourteen days of being served with the recommended disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate judge's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b)(3). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object. See Pall Corp. v Entegris, Inc., 249 F.R.D. 48, 52 (E.D.N.Y. 2008).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See 28 U.S.C. § 636(b)(1); Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). But if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp., 249 F.R.D. at 51 (internal quotation marks and citation omitted). Furthermore, even in a de novo review of a party's specific objections, a Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been but [were] not, presented to the magistrate judge in the first instance." J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc., 659 F. Supp. 2d

350, 353 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

B. <u>Objections to the February 21 R&R</u>

Bölükbasi, Özkan, and Metin object to the February 21 R&R on the grounds that Judge Tomlinson improperly relied upon, <u>inter alia</u>, a statement made by Defendant Coban to the Istanbul Police on March 11, 2009 and deposition testimony of Defendant Gibbins from November 3, 2010, arguing that these individuals are not credible and pointing the Court to other evidence extrinsic to the Second Amended Complaint that arguably contradicts the evidence relied upon by Judge Tomlinson. The Court agrees that it was improper for Judge Tomlinson to rely on such evidence, although not for the reasons articulated in the objections.

A party's default constitutes an "admi[ssion] of all 'well-pleaded' factual allegations <u>contained in the complaint</u>." <u>City of N.Y. v. Mickalis Pawn Shop, L.L.C.</u>, 645 F.3d 114, 137 (2d Cir. 2011) (emphasis added) (quoting <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004)); <u>accord</u> <u>Cablevision Sys. N.Y.C. Corp. v. Lokshin</u>, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). Thus, "a district court may not enter a default judgment unless <u>the plaintiff's complaint</u> states a valid facial claim for relief." <u>Mickalis Pawn Shop</u>, 645 F.3d at 137 n.23 (emphasis added) (collecting cases from other circuits); <u>see also</u> <u>Jackson v. Corr. Corp. of Am.</u>, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) ("[T]he

15

defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." (internal quotation marks and citation omitted)); GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("A default judgment cannot stand on a complaint that fails to state a claim."). Here, however, the February 21 R&R relies, almost exclusively, on exhibits attached to Plaintiffs' motion for default judgment-- exhibits that were not attached to or referenced in the Second Amended Complaint. Thus, the allegations contained in those exhibits were not deemed "admitted" upon Bölükbasi, Özkan, and Metin's default and should not have been considered in deciding Plaintiffs' motion for a default judgment.[6]  Accordingly, their objections are SUSTAINED and this Court declines to adopt Judge Tomlinson's February 21 R&R to the extent that it recommends a finding of liability.[7]

---

[6] Default judgments are disfavored, see State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir. 2004), so before a district court will enter one, it must ensure that the defaulting defendants received notice of the claims against them and were provided an opportunity to answer those allegations.  To the extent that Plaintiffs here rely upon evidence extrinsic to the Second Amended Complaint to state a claim, the defaulting defendants were not given adequate notice and were deprived of a meaningful opportunity to respond.

[7] The February 21 R&R also recommends denying Plaintiffs' motion for default judgment on their gross negligence claims against these Defendants.  As Plaintiffs did not object to this finding,

In reviewing, <u>de</u> <u>novo</u>, whether Plaintiffs are entitled to a default judgment against Bölükbasi, Özkan, and Metin, the Court is limited to the non-conclusory, factual allegations in the Second Amended Complaint.  <u>See</u> <u>Wildlife Ctr., Inc. v. Fasig Tipton Ky., Inc. (In re Wildlife Ctr., Inc.)</u>, 102 B.R. 321, 325 (E.D.N.Y. 1989) ("[A] party in default does not admit mere conclusions of law." (internal quotation marks and citation omitted)); <u>accord</u> <u>Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.</u>, No. 05-CV-1655, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007).  With respect to these defendants, the Second Amended Complaint makes the following non-conclusory allegations: that the Salzman Defendants paid Bölükbasi and Özkan $799,950.00 each from Plaintiffs' escrowed funds in the Salzman Defendants' possession (Second Am. Compl. ¶ 179); that Bölükbasi and Özkan did not "deliver[] any contractual performance" or "give[] any other lawful valuable consideration" in exchange for their receipt of that money (<u>id.</u> ¶¶ 181, 186); and that Bölükbasi, Özkan, and Metin are Turkish organized crime figures that are "actively involved in promoting similar schemes in the U.S. and elsewhere" (<u>id.</u> ¶ 71). Whether such allegations are sufficient to state a claim for fraud, conspiracy, conversion, unjust enrichment, or gross negligence was

_____

the Court hereby ADOPTS this portion of Judge Tomlinson's R&R and DISMISSES those claims WITH PREJUDICE.

not briefed by Plaintiffs in their moving papers,[8] and it is not this Court's obligation to "make a party's arguments for it or 'fill in the blanks' on that party's behalf," Bey v. New York, No. 11-CV-3296, 2013 WL 3282277, at *6 (E.D.N.Y. June 25, 2013) (internal quotation marks and citation omitted); cf. Sioson v. Knights of Columbus, 303 F.3d 458, 460 (2d Cir. 2002) (stating that the Circuit will generally decline to scour the record for evidence to support a party's arguments). Accordingly, Plaintiffs' motion for default judgment against Defendants Bölükbasi, Özkan, and Metin on their fraud, conspiracy, conversion, unjust enrichment, and gross negligence claims is DENIED, and for the reason explained above, see supra note 7, Plaintiffs' negligence claims against these defendants are DISMISSED WITH PREJUDICE.

The Court will, however, allow Plaintiffs to submit a new motion for default judgment that applies the appropriate standard articulated above on their fraud, conspiracy, conversion and unjust enrichment claims. Such motion shall be received within thirty (30) days of the date of this Memorandum and Order or these claims against these defendants will be dismissed pursuant to Rule

---

[8] Although Plaintiffs acknowledge in their brief that the Court's analysis is limited to the "well-pleaded allegations [in] the complaint" (Pls. Mot., Docket Entry 248, at 22), they proceed to explain "what [they] expect[] the evidence would have shown at a trial of this matter" (id. at 10), not whether those well-pleaded allegations state a claim for relief.

41(b) of the Federal Rules of Civil Procedure for failure to prosecute. If, upon reviewing the allegations in the Second Amended Complaint, Plaintiffs do not believe that they have stated a claim for relief, they may voluntarily dismiss those claims/defendants pursuant to Rule 41(a)(1)(A)(i).[9]

## C. Objections to the March 8 R&R

Plaintiffs, as well as Defendants Bölükbasi, Özkan, and Metin, submitted objections to Judge Tomlinson's March 8 R&R. Bölükbasi, Özkan, and Metin again argue that Judge Tomlinson erred in considering the statements of Coban and Gibbins, which were extrinsic to the Second Amended Complaint, and for the reasons articulated above, those objections are SUSTAINED. Because, in determining whether the Second Amended Complaint established the liability of Defendants Schmidt, Ambiente, Ralston, Greenbaum, CBOD, ADC, Slacum, Wagner, Coban, Bölükbasi, Özkan, and Metin on Plaintiffs' RICO, securities fraud, and breach of contract claims,

---

[9] Given that partial judgments have been entered in this action, the Court questions whether Plaintiffs could move to file a Third Amended Complaint without first vacating the existing partial default judgments. See Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) ("A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)."); see also, e.g., F.D.I.C. v. Weise Apartments, 192 F.R.D. 100, 103 (S.D.N.Y. 2000) (finding that parties could not stipulate to the amendment of the complaint without first moving to vacate the existing partial default judgment because "once final judgment has been entered, the complaint is merged into the judgment" (citing Paganis v. Blonstein, 3 F.3d 1067, 1072 (7th Cir. 1993)).

Judge Tomlinson relied heavily on evidence extrinsic to the Second Amended Complaint,[10] the Court cannot adopt the March 8 R&R's finding of liability.

Further, as Plaintiffs' moving papers relied almost exclusively on evidence extrinsic to the Second Amended Complaint in attempting to establish liability, the Court will not conduct a de novo review at this time. Rather, Plaintiffs' current motion is DENIED with leave to refile in accordance with the standards articulated in this Memorandum and Order. Such motion shall be received within thirty (30) days of the date of this Memorandum and Order or these claims against these defendants will be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. If, upon reviewing the

---

[10] In reviewing the docket in this action, the Court realized that it has previously entered partial default judgments based on other R&Rs that also improperly relied on evidence extrinsic to the Second Amended Complaint to establish liability. The Court cannot, however, sua sponte amend a judgment based on a mistake of law. Compare FED. R. CIV. P. 60(a) (allowing the court to sua sponte correct a final order or judgment to correct a clerical mistake, oversight or omission), with FED. R. CIV. P. 60(b) (providing other grounds for relief from judgment "[o]n motion"). See also Weeks v. Jones, 100 F.3d 124, 128-29 (11th Cir. 1996) (collecting cases that state that mistakes of law that "affect substantial rights of the parties" are beyond the scope of Rule 60(a) and, thus, cannot be raised by a court sua sponte (internal quotation marks and citations omitted)).

Thus, counsel for Plaintiffs is hereby ORDERED to serve a copy of this Memorandum and Order on all defendants against whom Plaintiffs have received partial default judgments within seven (7) days of the date of this Memorandum and Order.

allegations in the Second Amended Complaint, Plaintiffs do not believe that they have stated a claim for relief, they may voluntarily dismiss those claims/defendants pursuant to Rule 41(a)(1)(A)(i).

Given that the Court is granting Plaintiffs leave to re-file, it must make a few additional points. First, Plaintiffs' fraud and RICO claims must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); see also Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000) (applying Rule 9(b) to a complaint alleging securities fraud); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178-79 (2d Cir. 2004) (applying Rule 9(b) to substantive RICO claims). In order to comply with Rule 9(b), the Second Amended Complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted). Further, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Rather, where, as here, multiple defendants are

alleged to have been involved in the fraud, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Second, to the extent that Plaintiffs already have partial default judgments on their unjust enrichment claims, they are likely barred from recovering for breach of contract. Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987); accord U.S. E. Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc., 38 F.3d 1289, 1296 (2d Cir. 1994). Here, in obtaining judgments on their unjust enrichment claims, Plaintiffs have, in effect, conceded that no valid contract governing the dispute exists. Thus, it appears as though Plaintiffs will not be able to recover under a breach of contract theory.

Third, Plaintiffs objected to the March 8 R&R, arguing that Judge Tomlinson erred in recommending the denial of their motion for default judgment on the RICO claims against Defendants Schmidt, Ralston, Coban, Bölükbasi, Özkan, and Metin[11] on the

_____

[11] Plaintiffs do not object to Judge Tomlinson's recommendation that default judgment be denied on their RICO claims against

grounds that those claims were barred by 18 U.S.C. § 1964(c), the
so-called "RICO Amendment."  (March 8 R&R at 20-21 (stating that
under the RICO Amendment, "no person may rely upon any conduct
that would have been actionable as fraud in the purchase or sale
of securities to establish a violation of section 1962 unless the
defendant is criminally convicted in connection with the fraud"
(quoting 18 U.S.C. § 1964 (internal quotation marks omitted).)
Plaintiffs argue that this was in error because: (1) "their
allegations of RICO-relevant fraudulent conduct by the Defaulted
Defendants far exceed mere securities violations" (Pls. Objs.,
Docket Entry 343, ¶ 7) and (2) given that "a substantial likelihood
exists that criminal convictions may yet be obtained," Plaintiffs
should be granted a stay until the resolution of the criminal
proceedings pending against these defendants (id. ¶¶ 7-8).  Both
objections are OVERRULED.  Plaintiffs chose not to brief their
first objection, stating that "it may not be in the interest of
judicial economy" to fully brief their non-securities-related
predicate acts and that they would prefer a stay (id. ¶ 7), and  a
Court need not entertain an argument that was not briefed, see,
e.g., Fidelity Bank, Nat'l Ass'n v. Avrutick, 740 F. Supp. 222,
228 n.6 (S.D.N.Y. 1990) (refusing to address a defense that was
mentioned only in passing but not briefed).  Plaintiffs' second

---

Ambiente, CBOD, Greenbaum, Skalum, and ADC, and, accordingly,
those claims are hereby DISMISSED WITH PREJUDICE.

objection--their request for a stay--was not raised in their initial moving papers, see J.P.T. Auto., 659 F. Supp. 2d at 353 (stating that a court in reviewing specific objections to an R&R will not consider arguments that "could have been but [were] not, presented to the magistrate judge in the first instance").

Fourth, Plaintiffs also objected to the March 8 R&R to the extent that it denied their request for compensatory and benefit-of-the-bargain damages, including the nearly $160 million in profits that were allegedly promised as a return on their investment. However, as the Court has rejected Judge Tomlinson's finding as to liability, the issue of damages is premature. Accordingly, Plaintiffs' objection is OVERRULED.[12]

Finally, while the Court is granting Plaintiffs leave to file a new motion for default judgment on their remaining claims, they are not required to do so and may, instead, voluntarily dismiss those claims without prejudice. Plaintiffs are warned that if they do so move and the allegations as pled in their Second

---

[12] The Court questions, without deciding, whether Plaintiffs would be entitled to the "benefit-of-the-bargain" damages they request even if they establish liability. See Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.), 84 F.3d 1286, 1290 (10th Cir. 1996) (finding that an innocent investor in a Ponzi scheme was not entitled to benefit-of-the-bargain damages because there were many innocent investors, so "[t]o allow [her] to enforce h[er] contract to recover promised returns in excess of h[er] [investment] would be to further the [defendants'] fraudulent scheme at the expense of other [investors]" (internal quotation marks and citation omitted)).

Amended Complaint fail to state a claim, they risk having those claims dismissed with prejudice.

II.  <u>Motion to Reinstate Claims against the Salzman Defendants</u>

Plaintiffs entered into a settlement agreement (the "Salzman Agreement") on or around December 18, 2009 (Pls.' Mot. to Reinstate Salzman Defs. ("Pls.' Salzman Mot."), Docket Entry 316, Ex. A), pursuant to which the parties stipulated to the discontinuance of this action as against the Salzman Defendants without prejudice (to be converted to a stipulation with prejudice upon conclusion of the pending action) (Docket Entry 83). Plaintiffs now seek to rescind the Salzman Agreement and reinstate the claims against the Salzman Defendants on the grounds that: (1) the Salzman Agreement is voidable as there was fraud in the inducement--namely, Salzman provided Plaintiffs with an inaccurate and incomplete accounting prior to entering into the agreement and/or (2) Salzman materially breached its terms.  (Docket Entry 315.)  The Salzman Defendants have not opposed this motion.

The Court will first review the pertinent terms of the Salzman Agreement before turning to the merits of Plaintiffs' arguments.

A.  <u>The Salzman Agreement</u>

In the simplest terms, the Salzman Agreement provided that, in exchange for Plaintiffs discontinuing their claims against the Salzman Defendants, they were required to pay

Plaintiffs $225,000 and cooperate in good faith with Plaintiffs'
efforts to recover the funds allegedly lost in the advanced fee
fraud scheme.   The Salzman Agreement states that the Salzman
Defendants' cooperation included the following:

> the obligation (to the extent not already
> complied with) to provide all documents
> concerning the transactions referred to in the
> Second Amended Complaint filed in the Action,
> including without limitation all documents
> concerning communications with any of the
> other defendants in the Action (other than
> Marilyn Salzman) concerning the transactions
> referred to therein, assisting Plaintiffs'
> review of these records, and providing full
> and truthful testimony concerning the
> transactions in any action, arbitration,
> investigation or proceeding at the request of
> Plaintiffs . . . .

(Pls.' Salzman Mot. Ex. A ¶ 8.3.)   The Salzman Agreement further
provides that:

> Th[e] discontinuance without prejudice shall
> be deemed to be and shall be converted to one
> with prejudice without further action of the
> parties at the conclusion of this Action
> unless it is established that Salzman, in
> providing documentation and/or sworn
> testimony to Plaintiffs subsequent to and as
> part of the cooperation aspect of this
> Agreement has intentionally made a material
> misrepresentation of fact or failed to
> disclose a material fact of such significance
> as to constitute fraudulent concealment . . . .

(Id. ¶ 2.)   That paragraph, however, qualifies Plaintiffs' right
to reinstate its claims against the Salzman Defendants, stating
that:

> Plaintiffs shall have no right to treat the claims as against the Salzman Defendants as having been discontinued without prejudice and/or to attempt to revive the claims unless and until such intentional material misrepresentation or material omission constituting fraudulent concealment has been determined to have occurred by a duly appointed arbitration panel, following an arbitration held pursuant to the provisions of Paragraph 9 hereof.

(Id.)

Paragraph 9, titled "Arbitration" provides, in relevant part, as follows:

> The Parties agree that any dispute[,] claim or controversy arising out of or relating to the Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by a final and binding arbitration at JAMS in New York, New York before three arbitrators.

(Id. ¶ 9.)[13]

There are three other provisions that are relevant to the Court's discussion. The first is titled "Waiver of Challenge on Grounds of Nullity or Voidability" and provides as follows: "The Parties hereto waive any and all challenges to the validity and enforceability of this Agreement or of any payment made

---

[13] The necessity of arbitration is mentioned two other times in the agreement:  in Paragraph 5.6 relating to the withdrawal and retroactive revocation of the agreement's releases, and in Paragraph 8.3(d), which states that Salzman's cooperation shall be sufficient unless determined by an arbitrator to be otherwise.

thereunder at any time, for any reason and in any forum, to the fullest extent permitted by law." (<u>Id.</u> ¶ 4.) The second is a merger clause, which provides that the Salzman Agreement:

> contains the entire Agreement between the Parties and no compromise, inducement or representation other than as set forth in this Agreement has been made, offered or agreed upon. Except as explicitly set forth in this Agreement, there are no representations, warranties or inducements whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or any of its conditions or terms. All prior negotiations, oral or written, are merged into this Agreement.

(<u>Id.</u> ¶ 10.5.) Finally, the Salzman Agreement provides that it shall be governed by New York law. (<u>Id.</u> ¶ 10.6.)

B. <u>Plaintiffs' Grounds for Relief</u>

Although Plaintiffs have not formally fashioned their motion as one pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, in order to reinstate their claims against the Salzman Defendants, the Order dismissing them must be vacated. Therefore, Rule 60(b) governs. Rule 60(b) provides that a district court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3)  fraud (whether previously called intrinsic or
>      extrinsic), misrepresentation, or misconduct
>      by an opposing party;
>
> (4)  the judgment is void;
>
> (5)  the judgment has been satisfied, released or
>      discharged; it is based on an earlier judgment
>      that has been reversed or vacated; or applying
>      it prospectively is no longer equitable; or
>
> (6)  any other reason that justifies relief.

FED. R. CIV. P. 60(b).  Any motion under Rule 60(b) "must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  FED. R. CIV. P. 60(c)(1).

Here, Plaintiffs are seeking vacatur on the grounds of fraud and material breach of the Salzman Agreement; thus, the only applicable subsections are (3) and (6).  However, the Salzman Defendants were dismissed from this action on March 16, 2010 (Docket Entry 128), more than two years before Plaintiffs filed the present motion on October 1, 2012.  Thus, to the extent that they seek vacatur under subsection (3), their motion is time-barred.  The Court also finds that their motion is time-barred under subsection (6).  Although the time limit for filing a Rule 60(b) motion is "within a reasonable time," FED. R. CIV. P. 60(c)(1), Plaintiffs were aware of the grounds for filing their motion as early as March 11, 2010, when they deposed Salzman and discovered that his accounting was incomplete (see Pls.' Salzman

Mot. Ex. D), and as late as December 22, 2010, when they first wrote to the Court indicating their intention to move to reinstate the claims against the Salzman Defendants on account of a material breach (Docket Entry 254). Plaintiffs informed the Salzman Defendants of their alleged breach on May 2, 2011 (Pls.' Salzman Mot. Ex. B) and again raised their intention to move to reinstate the claims against the Salzman Defendants on August 7, 2011 (Docket Entry 289). They failed, however, to so move for another fourteen months, and they failed to provide any reason to justify the delay. See PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983) (stating that when "considering whether a Rule 60(b)(6) motion is timely, we must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay"). The Second Circuit has found a delay of eighteen months was "plainly" not made within a reasonable time, see Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995), and here we have a delay of nearly twenty-two months. Accordingly, the Court DENIES Plaintiffs' motion as untimely.[14]

---

[14] Even if Plaintiffs' motion was not untimely, the Court questions whether Plaintiffs would otherwise be entitled to relief under Rule 60(b). Although district courts have discretion in evaluating Rule 60(b) motions, relief under this provision is extraordinary and should be granted "upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001); accord Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). Here, Plaintiffs may have waived their fraud-in-the-inducement argument due to the Salzman Agreement's "Waiver of Challenge on Grounds of Nullity

III. <u>Cross Motions Regarding the Agreement Between Plaintiffs and Defendants Gibbins and Meytec</u>

Plaintiffs entered into a settlement agreement with Defendants Gibbins and Meytec (the "Gibbins/Meytec Agreement") on or around September 9, 2010 (Pls. Mot. to Reinstate Defs. Gibbins & Meytec ("Pls.' G/M Mot."), Docket Entry 312, Ex. A), pursuant to which the parties consented to the entry of judgment against Gibbins and Meytec jointly and severally in the amount of $7,536,345.00 (Docket Entry 234; Pls.' G/M Mot. Ex. A). Plaintiffs now seek to rescind the Gibbins/Meytec Agreement and reopen and reinstate its claims against those defendants on the grounds that: (1) the Gibbins/Meytec Agreement is voidable as there was fraud in the inducement--namely, Gibbins entered into the Agreement knowing that he had no intentions of complying with its terms and/or (2) Gibbins materially breached its terms. (Docket Entries 311-12.) Gibbins and Meytec oppose this motion and have filed a cross-motion for a declaration that Plaintiffs breached the

_____

or Voidability" and merger clauses, <u>see, e.g.</u>, <u>Nat'l Westminster Bank PLC v. Empire Energy Mgmt. Sys., Inc.</u>, No. 93-CV-5331, 1998 WL 47830, at *3 (S.D.N.Y. Feb. 5, 1998) (finding that a fraud-in-the-inducement claim was barred by a provision of a guarantee agreement waiving such a defense); <u>VNB N.Y. Corp. v. M. Lichtenstein L.L.C.</u>, No. 24851/10, 32 Misc. 3d 1240(A), 938 N.Y.S.2d 230, 2011 WL 4024664, at *10-11 (Sup. Ct. Kings Cnty. Sept. 8, 2011) (similar), and they will be free to commence a separate action against the Salzman Defendants upon receiving a determination from an arbitrator that there was a breach (Pls.' Salzman Mot. Ex. A ¶ 2). Thus, the need to reinstate the claims against the Salzman Defendants in the present action does not appear to be extraordinary or exceptional.

Gibbins/Meytec Agreement.  (Docket Entry 319.)  Plaintiffs have opposed this motion.

The Court will first review the pertinent terms of the Gibbins/Meytec Agreement and the Consent Judgment before turning to the merits of the parties' motions.

A.    G/M Settlement Agreement and the Consent Judgment

The Gibbins/Meytec Agreement provided that, in exchange for $1,600,000 to be paid by the FIFO Defendants to Plaintiffs, Gibbins' cooperation in Plaintiffs' efforts to recover the funds allegedly lost in the advanced fee fraud scheme, and Gibbins and Meytec's consent to the entry of judgment against them in the amount of approximately $7.5 million, Plaintiffs would discontinue their claims against Gibbins and Meytec, as well as release the following individuals/entities from liability:    the FIFO Defendants, Natalia Adel Tobias-Gibbins (and other members of the Tobias-Gibbins family), Defendant Halley, Katherine Halley, Sampaio, HSBC Middle East, Sulaiman IS AI Bassam, River & Mercantile Holding Ltd., James Denney, Tinwood Pension Trust, Defendant A. Rashid, and Andrew Needleman.  (Pls.' G/M Mot. Ex. A. at 1-2 & ¶¶ 7, 13.)  So long as certain conditions were met-- namely, if: (1) Plaintiffs received the $1.6 million dollars; (2) Gibbins cooperated with Plaintiffs;[15] and (3) there was no other

_____

[15] Gibbins' cooperation included "the obligation to provide material admissible evidence and other substantial information

32

"Event of Default"--Plaintiffs agreed to "permanently and unconditionally forbear enforcement" of the Consent Judgment. (Id. ¶ 9.)

Events of Default" included Gibbins' failure to promptly provide Plaintiffs with requested information, Gibbins' failure to provide Plaintiffs with current contact information, the FIFO Defendants' failure to make prompt payment of the monies due, and the failure of either Plaintiffs or Gibbins from "refraining from taking any action which this Agreement requires that party to refrain from taking." (Id. ¶ 20.) If Plaintiffs defaulted, Gibbins could: (1) terminate the Gibbins/Meytec Agreement, (2) move to have the present action dismissed, and/or (3) demand immediate repayment of the $1.6 million. If Gibbins defaulted, Plaintiffs could: (1) terminate the Gibbins/Meytec Agreement and/or (2) move to reinstate and continue the present litigation. However, before taking any of the above-listed actions, the non-defaulting party would have to "satisfy the Court, on the balance of probabilities, that the alleged default has been established." (Id. ¶ 22.)

Further, the Gibbins/Meytec Agreement provided that:

---

to and at the request of [Plaintiffs]," including both documentary and testimonial evidence. (Id. ¶ 11.) Gibbins was obligated to cooperate for twelve months after the execution of the Agreement (id. ¶ 31); therefore, Gibbins' obligations extended through September 9, 2011.

> Unless it is established that [Gibbins], in
> providing documentation and/or sworn
> testimony to [Plaintiffs] as part of [his]
> obligation to cooperate set forth in this
> Agreement[,] has intentionally or with gross
> negligence failed to disclose a material
> document or fact or made a material
> misrepresentation of fact, or that
> [Plaintiffs] have materially breached the
> terms of this Agreement[,] [Plaintiffs] shall
> have no right to treat the claims as against
> [Gibbins and Meytec] as having been
> discontinued without prejudice and/or to
> attempt to revive the claims unless and until
> such intentional or grossly negligent failure
> to disclose a potentially material document or
> fact or material misrepresentation has been
> determined to have occurred by the Court on
> motion.

(Id. ¶ 11(xiii).) In addition, if Gibbins or Meytec breaches the

Agreement, Plaintiffs shall be entitled to execute the Consent

Judgment in addition to reinstating the claims against them. (Id.

¶ 11(xiv).)

The Gibbins/Meytec Agreement also contains a "Waiver of

challenge for nullity or voidability," similar to the Salzman

Agreement (id. ¶ 10), a merger clause (id. ¶ 24), as well as a New

York choice of law provision and an Eastern District of New York

venue provision (id. ¶ 23). Although the Gibbins/Meytec Agreement

provided for the Eastern District of New York to "retain personal

and subject matter jurisdiction even after judgment by consent has

been entered," (id.) the Consent Judgment did not contain any

language suggesting that the undersigned would retain jurisdiction

over the Gibbins/Meytec Agreement (Docket Entry 234).

B.   <u>Plaintiffs' Motion</u>

Plaintiffs' motion to reinstate its claims against Gibbins and Salzman is also governed by Rule 60(b) of the Federal Rules of Civil Procedure, and, for the reasons described above, is also time-barred.  Plaintiffs sent Gibbins a letter on June 29, 2011 seeking to terminate the Gibbins/Meytec Agreement and listing the alleged Events of Default.  (Pls.' G/M Mot. Ex. B.)  However, Plaintiffs failed to make the present motion until October 1, 2012--more than fifteen months later--or provide any explanation as to why such a significant delay was necessary.  Thus, the Court finds that this delay was not reasonable, and accordingly Plaintiffs' motion is DENIED as time-barred.

C.   Gibbins and Meytec's Motion

Gibbins and Meytec move to enforce the Gibbins/Meytec Agreement and, specifically, seek the immediate repayment of the $1,600,000 settlement amount and dismissal of the action against Gibbins and Meytec with prejudice.  The Court, however, cannot entertain this motion, as it does not have subject matter jurisdiction.

"Enforcement of [a] settlement agreement, . . . whether through an award of damages or a decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis of jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378, 114 S. Ct. 1673,

35

128 L. Ed. 2d 391 (1994). The Supreme Court has stated that, unless "the order of dismissal--either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order," a district court lacks jurisdiction to enforce the terms of a settlement agreement. Id. at 381; see also Scelsa v. City Univ. of N.Y., 76 F.3d 37, 41 (2d Cir. 1996) (finding that where a dismissal order "neither expressly retains jurisdiction over the Agreement nor incorporates its terms," a district court must decline to exercise jurisdiction); Murphy v. Bd. of Educ., 79 F. Supp. 2d 239, 241-42 (W.D.N.Y. 1999) (denying a motion to enforce a settlement agreement because the dismissal order did not provide for the court's continued jurisdiction). In the present action, the Court was not provided with a copy of the Gibbins/Meytec Agreement, nor was it mentioned in the Consent Judgment. Accordingly, the Court lacks jurisdiction over this dispute, and Gibbins and Meytec's motion is DENIED.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) Bölükbasi, Özkan, and Metin's objections (Docket Entry 347) to Judge Tomlinson's R&Rs are SUSTAINED and Plaintiffs' objections (Docket Entry 343) are OVERRULED;

(2) Judge Tomlinson's R&Rs (Docket Entries 329, 333) are hereby ADOPTED IN PART to the extent that they recommend

dismissal of the negligence claims against Bölükbasi, Özkan, and Metin and of the RICO claims against Ambiente, CBOD, Greenbaum, Slacum, and ADC; and those claims are hereby DISMISSED WITH PREJUDICE;

(3) Plaintiffs' motions for default judgments (Docket Entries 247, 306) are DENIED with leave to renew as outlined above;

(4) Plaintiffs' motion to reinstate its claims against the Salzman Defendants (Docket Entry 315) is DENIED;

(5) Plaintiffs' motion to reinstate its claims against Gibbins and Meytec (Docket Entry 311) is DENIED;

(6) Gibbins and Meytec's motion to enforce the Gibbins/Meytec Agreement (Docket Entry 319) is DENIED;

(7) all claims against Defendants Blackstone, Rana, Sampaio, Sino, It's Investment, Schramm, Lider, Cetin, A. Rashid, John M. Preston Limited, Kazan, Sahin, Ürkmez, Sinclair, Harrison, Halley, Renfrew, and London Financial will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Procedure for failure to timely effectuate service[16] unless Plaintiffs provide proof of service within seven (7) days of the date of this Memorandum and Order;

---

[16] Plaintiffs received an extension of time to serve all remaining overseas defendants through January 12, 2011. (Docket Entry 233.) Plaintiffs have not asked for any further extensions, nor have any been granted.

(8) all remaining claims against the defendants that have been served--specifically, Schmidt, Ambiente, Wagner, CBOD, Greenbaum, Ralston, Slacum, ADC, Coban, Veli, Kocabas, Karli, Bölükbasi, Özkan, and Metin--will be dismissed with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute unless Plaintiffs move for a default judgment on those claims or voluntarily dismiss those claims within thirty (30) days of the date of this Memorandum and Order.

It is further ORDERED that counsel for Plaintiffs shall serve a copy of this Memorandum and Order on Defendants Schmidt, Ambiente, Wagner, CBOD, Greenbaum, Ralston, Slacum, ADC, Coban, Veli, Kocabas, Karli, Bölükbasi, Özkan, and Metin and the Salzman Defendants and file proof of service within (7) days of the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 3, 2013
          Central Islip, NY